1  **WO**

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                       FOR THE DISTRICT OF ARIZONA

9

10

11

12  Harris Technical Sales, Inc.,)  No. 06-02471-PHX-RCB
    an Arizona corporation,      )
13                               )            **O R D E R**
            Plaintiff,           )
14                               )
      vs.                        )
15                               )
                                 )
16  Eagle Test Systems, Inc., a)
    Delaware corporation,        )
17                               )
            Defendant.           )
18                               )
    _____)
19

20        Currently pending before the court is a motion for "partial

21  summary judgment" pursuant to Fed. R. Civ. P. 56 by defendant,

22  Eagle Test Systems, Inc. ("Eagle") (doc. 44).  Also pending are

23  five motions by Eagle to strike portions of the opposing

24  affidavits[1] filed by plaintiff, Harris Technical Sales, Inc.

25  ("Harris") (docs. 98, 99, 100, 101 and 102).  After carefully

26

27  _____

         [1]     Actually Eagle is moving to strike four affidavits and a purported
28  declaration, but for the sake of brevity, the court will collectively refer to
    these submissions as "affidavits."

1    considering these motions, plaintiff's response to Eagle's

2    motion for "partial summary judgment" (docs. 76 and 77), Eagle's

3    reply (doc. 96) and its "objections to plaintiff['s] . . .

4    statement of facts ["PSOF"] (doc. 97), the court rules as

5    follows.[2]

6    ***I. Evidentiary Objections***

7         The court will first address Eagle's motions to strike and

8    its objections to PSOF.  After clarifying the state of the record

9    *vis-a-vis* these evidentiary rulings, the court will then be in a

10   position to address Eagle's Rule 56 motion.

11        Complying with LRCiv 56.1(a), Eagle filed a succinct

12   statement of facts ("DSOF"), identifying the following

13   "undisputed material facts" which form the basis for its Rule 56

14   motion:

15           1.  Plaintiff . . . and Defendant . . . entered
             into a contract entitled 'Manufacturers
16           Representative Agreement' on or about November 12,
             1998 [(hereinafter "the Agreement")]. . . .
17
             2.  Mike Harris, president of [plaintiff] Harris
18           . . . , sent a letter to Len Foxman of Eagle . . .
             dated November 29, 2000, which stated in part
19           'you have given me no choice but to terminate the
             contract effective immediately' and 'please
20           use this letter as your formal notification
             [plaintiff] Harris . . . , no longer represents
21           [Eagle]. . . .[3]

22           3.  Eagle . . . paid [plaintiff] Harris . . . ,
             a total of $152,538.34 in commissions for sales
23           that were closed prior to March 1, 2001, which
             was 90 days after [plaintiff] Harris terminated
24           the Agreement on November 29, 2000. . . .

25

26        [2]    Finding oral argument unnecessary, the court denies Eagle's request
     in this regard.  See Mot. (doc. 44) at 1.
27
          [3]    Hereinafter this document will be referred to as the "termination
28   letter."

DSOF (doc. 45) at 1, ¶¶ 1-3 (citations omitted).

As Eagle is quick to point out, plaintiff Harris did not, as LRCiv 56.1(b) mandates, "specifically controvert[] by a correspondingly numbered paragraph[]" any of the "facts" in DSOF.[4]  Thus, in accordance with that Rule, the court "deem[s] admitted for purposes of th[is] motion" the three uncontroverted facts set forth in the DSOF.  See LRCiv 56.1(b).

### *A.  PSOF*

In striking contrast to plaintiff, Eagle filed detailed objections to PSOF.  Of the 27 paragraphs in PSOF, there are only two which Eagle does not dispute.  Eagle agrees that it entered into the November 12, 1998, Agreement with plaintiff and that "Illinois has enacted a Sales Representative Act[.]" Def. Obj. (doc. 97) at 2,¶ 2; and at 12, ¶ 27.

Eagle "objects" to 12 of the paragraphs in PSOF because plaintiff did "not cite to any, let alone a specific portion of, evidence" to support these purported "facts."  See, e.g., id. at 2, ¶¶ 1, 3 and 4 (emphasis in original).  This objection is well taken.

---

[4]  That Rule reads in its entirety as follows:

> Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts *shall*, unless otherwise ordered, *be deemed admitted for purposes of the motion for summary judgment* if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts.

LRCiv 56.1(b) (emphasis added).

1    As the non-moving party, plaintiff Harris "must come forward
2 with specific facts showing there is a genuine issue for trial."
3 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
4 586-87 (1986) (internal quotation marks and citations omitted).
5 In this regard, "[p]arties must *designate specific facts* and
6 provide the court with their location in the record." Esteem v.
7 City of Pasadena, 2007 WL 4270360, at *3 (C.D.Cal. 2007) (citing
8 Orr v. Bank of Am., NT & SA, 285 F.3d 764, 765 (9th Cir. 2002))
9 (emphasis added).   LRCiv 56.1(b) echoes this requirement
10 specifically mandating that an opposing factual statement "refer
11 to a specific admissible portion of the record where the fact"
12 supposedly creating a genuine issue for trial "finds support."
13 The Ninth Circuit strictly adheres to this specificity
14 requirement, having repeatedly held that "[g]eneral references
15 without page or line numbers are not sufficiently specific." See
16 Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885,
17 889 (9th Cir. 2003) (citing cases).
18    In the present case, as to 12 of the purported "facts" set
19 forth in PSOF, conspicuously absent are *any* cites to the record,
20 much less a simple failure to provide a page or line number.
21 What is more, to the extent that evidence might exist somewhere
22 in the record to support these 12 claimed "facts" by plaintiff,
23 the court is not "required to comb the record" to find it. See
24 Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029
25 (9th Cir. 2001) (internal quotation marks and citation omitted).
26 Accordingly, the court will disregard paragraphs 1, 3, 4, 6, 14-
27 20, and 26 of PSOF. See Esteem v. City of Pasadena, 2007 WL
28 4270360, at *3 (C.D.Cal. 2007) (citing, *inter alia*, Orr, 285 F.3d

1  at 775 ("It is within our discretion to refuse to consider to
2  evidence that the offering party fails to cite with sufficient
3  specificity."). Likewise, the court also is disregarding the
4  references to the deposition of Eagle's CEO in paragraphs 23, 24
5  and 25 for failure to provide page or line numbers.

6  Because Eagle's objections to the remaining 13 "facts" in
7  PSOF are inextricably intertwined with its motions to strike, the
8  court will address the latter first. In the context of its
9  rulings on those motions to strike, the court will then return to
10 Eagle's detailed objections to the remaining "facts" enumerated
11 in PSOF.

12          **B.  Motions to Strike**

13 In opposing Eagle's Rule 56 motion, plaintiff is relying
14 upon affidavits from Messrs. Domke (PSOF (doc. 77), exh. C
15 thereto) and Barcey (PSOF (doc. 77), exh. D thereto), and a
16 "Verified Statement" from William Wu (PSOF (doc. 77), exh. B
17 thereto). Additionally, plaintiff is relying upon the affidavits
18 of its president, K. Michael Harris (doc. 48 at 3-4), and Valerie
19 Mack (doc. 48 at 5-6), previously filed in support of its motion
20 for a continuance. See Resp. (doc. 76) and 6 and 8. Eagle is
21 seeking to strike a significant portion of these opposing
22 affidavits. The court will address these motions to strike in
23 the order in which they were filed, but before doing so, it has a
24 few observations.

25 First, the court is keenly aware that it "may only consider
26 admissible evidence in ruling on a motion for summary judgment."
27 Ballen v. City of Redmond, 466 F.3d 736, 745 (9th Cir. 2006)
28 (citation omitted). The court is equally cognizant of the fact

1  that the Ninth Circuit has long recognized that "[d]efects in

2  evidence submitted in opposition to a motion for . . . summary

3  judgment are waived 'absent a motion to strike or other

4  objection.'" <u>FDIC v. N.H. Ins. Co.</u>, 953 F.2d 478, 484 (9th Cir.

5  1991) (quoting <u>Scharf v. U.S. Att'y Gen.</u>, 597 F.2d 1240, 1243

6  (9th Cir. 1979)).  By the same token, however, this case is

7  representative of a growing trend where  "attorneys . . . raise

8  every objection imaginable without regard to whether the

9  objections are necessary, or even useful, given the nature of

10  summary judgment motions in general, and the facts of their cases

11  in particular."  <u>See Burch v. Regents of the University of</u>

12  <u>California</u>, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006).  Eagle's

13  objections to PSOF, as well as its motions to strike, are replete

14  with unnecessary or improper objections.  If the court were to

15  consider each and every one of Eagle's countless objections, not

16  only would it be futile in many instances, but also it would be

17  "counter-productive[]" because this exercise would "begin[] to

18  defeat the objectives of . . . summary judgment practice –

19  namely, promoting judicial efficiency and voiding costly

20  litigation."  <u>See id.</u> at 1122 (citation omitted).  Indeed,

21  largely because of the manner in which plaintiff offered its

22  opposing evidence and the manner in which Eagle objected to it,

23  rather than promoting judicial efficiency, these motions had the

24  opposite effect.

25      To illustrate, Eagle is seeking to strike virtually every

26  averment in the five opposing affidavits.  A careful review of

27  plaintiff's opposing submissions reveals, though, that it is

28  relying only upon a few specific averments in those affidavits

1  (nine, to be exact).  Plainly then Eagle's detailed objections to

2  all 32 averments serve no legitimate purpose.

3      Many of Eagle's objections also are substantively

4  unnecessary.  Eagle is moving to strike nearly every averment in

5  each of the five opposing affidavits because they are irrelevant.

6  As the court in Burch astutely observed, however, "objections to

7  evidence . . . [as] irrelevant, speculative, and/or

8  argumentative, or that it constitutes an improper legal

9  conclusion are all duplicative of the summary judgment standard

10  itself."  Id.  "A court can award summary judgment only when

11  there is no genuine dispute of *material* fact.  It cannot rely on

12  irrelevant facts, and thus relevance objections are redundant."

13  Id.  Similarly, Eagle's  objections that certain averments are

14  speculative or constitute improper legal conclusions, are

15  "superfluous in this context[]" because such averments "are not

16  *facts* and likewise will not be considered on a motion for summary

17  judgment."  Id. (citation omitted).  As the court accurately

18  observed in Burch, "[i]nstead of *objecting*[,] parties should

19  simply *argue* that the facts are not material."  Id.

20          ***1.  Governing Legal Standards***

21      "[T]o survive summary judgment, a party does not necessarily

22  have to produce evidence in a form that would be admissible at

23  trial, as long as the party satisfies the requirements of Federal

24  Rules of Civil Procedure 56."  Fraser v. Goodale, 342 F.3d 1032,

25  1036-37 (9th Cir. 2003) (citation omitted).  Subsection (e) of

26  that Rule  "requires that affidavits submitted in support of a

27  motion for summary judgment must: (1) be made on the personal

28  knowledge of an affiant who is competent to testify to the matter

stated therein, (2) must state facts that would be admissible in evidence, and (3) if the affidavit refers to any document or item, a sworn or certified copy of that document or item must be attached to the affidavit." Boyd v. City of Oakland, 458 F.Supp.2d 1015, 1023 (N.D.Cal. 2006) (citing, *inter alia*, Fed. R. Civ. P. 56(e); and Orr, 285 F.3d at 774 n.9). "This rule applies to declarations as well as affidavits." Id. (citations omitted).

Additionally, "[a] declarant must show personal knowledge and competency to testify [as to] the facts stated." Id. (citing Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995)). In other words, "[t]he matters must be known to the declarant personally, as distinguished from matters of opinion or hearsay." Id. (citation omitted). Moreover, "[a] declarant's mere assertions that he or she possesses personal knowledge and competency to testify are not sufficient." Id. (citing Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999 (9th Cir. 1990)). Rather, in accordance with Rule 56(e), a declarant must show personal knowledge and competency "'affirmatively,' . . . , for example, by the nature of the declarant's position and nature of participation in [the] matter." Id. (internal quotation marks and citation omitted).

With these principles in mind, the court will consider Eagle's motion to strike plaintiff's five opposing affidavits.

### *a. Harris Affidavit*

Eagle is moving to strike eight of twelve averments from the affidavit of plaintiff's president, K. Michael Harris. Eagle offers a litany of reasons as to why the court should strike each of those averments: (1) lack of foundation; (2) improper opinion;

1   (3) failure to "set forth specific facts showing . . . genuine

2   issues for trial[;]" (4) lack of relevancy; and (5) the averments

3   are "vague, ambiguous and misleading[.]" See, e.g., Def. Obj. to

4   Harris Aff. (doc. 98) at 1, ¶ 4.  As to paragraph nine,

5   pertaining to the termination letter, Eagle also challenges this

6   averment on the basis that the letter itself is the "best

7   evidence of its contents[.]"  Def. Obj. to Harris Aff. (doc. 98)

8   at 3, ¶ 9.

9       Given the court's resolution of certain issues, it is not

10  necessary to individually rule on each of the seven objections

11  which Eagle separately makes to eight of Harris' averments.

12  Suffice it to say for now that in accordance with established

13  Ninth Circuit precedent, the court will not consider those

14  aspects of the Harris affidavit which it deems to be "conclusory,

15  self-serving, [and] lacking [in] detailed facts and . . .

16  supporting evidence[.]" See Nilsson v. City of Mesa, 503 F.3d

17  947, 952 (9th Cir. 2007) (citing Fed. Trade Comm'n v. Publ'g

18  Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997), as

19  amended (citations omitted)).  Nor will the court consider

20  statements in Mr. Harris' affidavit which are not based upon

21  personal knowledge and to which he is not competent to testify.

22  Finally, although the court will consider  the termination letter

23  referenced in paragraph nine of the Harris affidavit, it will not

24  consider the remainder of that averment.  The court declines to

25  consider most of that averment because nowhere in its response

26  did plaintiff cite to any specific language  therein supporting

27  its theory of commissions in perpetuity.

28                   ***b.  Mack Affidavit***

1    Eagle is seeking to strike nearly the entire affidavit of

2  Valerie Mack, "an executive assistant for [plaintiff] . . .

3  [f]rom 1995 to 2002[,] . . . was responsible for internal

4  management of [plaintiff's] contracts."  See Affidavit of Valerie

5  Mack (May 27, 2007) (doc. 48) at 1, ¶ 1.  Interestingly,

6  plaintiff does not rely upon Ms. Mack's affidavit to support any

7  of the "facts" in its SOF.  Instead, the only reference to the

8  Mack affidavit is in plaintiff's response memorandum.  In

9  particular, plaintiff states that Ms. Mack's affidavit, among

10  others, "attest[s] to the repeated unsuccessful efforts made by

11  Plaintiff to obtain an accounting and overdue commission payments

12  from Defendant."  Resp. (doc. 76) at 6-7.  Close examination of

13  the Mack affidavit reveals that there is only one reference

14  arguably pertaining to those efforts – paragraph 6.  That

15  paragraph states: "Throughout 1999, 2000 and 2001, I made

16  numerous requests of Eagle's employee Miriam Becerra, who I

17  understood was the sister of Eagle's CEO Leonard Foxman, for

18  sales activity reports and payment of sales commissions due to

19  [plaintiff], which were never provided."  Mack Aff. (doc. 48) at

20  6, ¶ 6.

21    The court agrees with Eagle that that paragraph is

22  "[i]rrelevant" to the narrow issue before the court on this

23  motion, *i.e.* whether plaintiff "is entitled to commissions in

24  perpetuity pursuant to [the] Agreement[.]" See Def. Obj. to Mack

25  Aff. (doc. 99) at 2, ¶ 6.  Moreover, even if paragraph 6 could

26  somehow be deemed relevant, given the manner in which it was

27  presented to the court, *i.e.* through counsel's characterization

28  in a legal memoranda, it is insufficient to defeat Eagle's Rule

- 10 -

56 motion.   See Sudbeck v. Sunstone Hotel Properties, Inc., 2006 WL 2728624, at *6 (D.Ariz. 2006) (citing Smith v. Mack Trucks, 505 F.2d 1248, 1249 (9th Cir. 1974) (per curiam)) ("Statements of counsel, whether in legal memoranda or elsewhere, are not evidence and may not be relied on to either support or defeat a motion for summary judgment.")   Thus the court will not consider paragraph 6 of the Mack affidavit in ruling on Eagle's Rule 56 motion.

What is more, because plaintiff is not relying upon any other part of Ms. Mack's affidavit in opposing this motion, there is no need to address the fairly detailed objections which Eagle interposes to the remainder of her affidavit.   Accordingly, the court grants Eagle's motion to strike the Mack affidavit (doc. 99), with the exception of paragraphs 1 and 7.[5]

### c.  Wu "Verified Statement"

Generally, Eagle objects to the "Verified Statement of William Wu" (doc. 77 at 9) because it does not indicate the place of execution.   Nor did Mr. Wu certify that he executed that statement "under penalty of perjury or under the laws of the United States."   See Def. Obj. to Wu Statement (doc. 100) at 1. Eagle also objects in a number of ways "to the specific language" of Mr. Wu's statement.   Id.   As will be seen, this "Statement" was not properly executed in accordance with 28 U.S.C. § 1746. The court therefore grants Eagle's motion to strike Mr. Wu's

---

[5]        Paragraph one, quoted above, simply explains Mack's position with plaintiff, while paragraph seven explains that her "primary contact for communication with Eagle was . . . Miriam Becerra and" that she "also communicated directly with Eagle's CEO Leonard Foxman." Mack Aff. (doc. 48) at 6, ¶ 7.   Neither of these averments advance plaintiff's opposition argument though, as will become evident.

statement, thus rendering moot Eagle's objections to the contents thereof.

Relying upon Fed. R. Civ. P. 43(c) and 28 U.S.C. § 1746, Eagle contends that the court cannot consider Mr. Wu's statement because it "does not constitute evidence" under either of those provisions.  See id.  Eagle's reliance upon Rule 43(c), pertaining to the "Record of Excluded Evidence," is puzzling to say the least in that that Rule has been abrogated.  See Fed. R. Civ. P. 43(c).

On the other hand, Eagle is correct that Mr. Wu's statement does not comply with 28 U.S.C. § 1746, and hence it is inadmissible.  Declarations made in accordance with that statute satisfy the requirements of Fed. R. Civ. P. 56(e) and thus may be offered in support of or opposition to a summary judgment.  See Knight v. United States, 845 F.Supp. 1372, 1375 (D.Ariz. 1993), aff'd without pub'd opinion, 77 F.3d 489 (9th Cir. 1996). Essentially, section 1746 provides that any matter that "is required or permitted to be supported, evidenced, established, or proved" may be done so by an unsworn declaration in writing of the person making the same "which is subscribed by him, as true under penalty of perjury, and dated[.]" 28 U.S.C. § 1746.

Evidently Mr. Wu's statement was made outside the United States as he indicates that his office is in Singapore.  See Doc. 77 at 9, ¶ 4.  Pursuant to  28 U.S.C. § 1746(a), an unsworn declaration "executed without the United States[]" should be in "substantially the following form[,]" indicating that it was made "under penalty of perjury under the laws of the United States[,]" and that it is "true and correct."  28 U.S.C. § 1746(1).

Although Mr. Wu's statement  recites that it "is true and correct[,]" doc. 77 at 9, nowhere therein does Mr. Wu indicate that he is making that statement "under penalty of perjury under the laws of the United States."  See 28 U.S.C. § 1746(1).

The Ninth Circuit has yet to address the issue, but at a minimum "substantial compliance" with section 1746 seems to require at least "[a]cceptance of the penalties of perjury[,]" if not "both an acceptance of the penalties of perjury and a statement that the declaration is 'true.'" See Silva v. Chertoff, 2007 WL 1795786, at *2 and n. 4 (D.Ariz. 2007) (and cases cited therein).  Because Mr. Wu did not accept the penalties of perjury in his statement, the court strikes that statement and will not consider this inadmissible evidence in opposition to Eagle's Rule 56 motion.  See id. at *2 (declining to "accept" a document which did not substantially comply with section 1746 in opposition to a summary judgment motion).

### d.  Domke Affidavit

Careful review of plaintiff's opposition shows that it is relying upon the affidavit of Douglas C. Domke, a former ON Semiconductor employee, to establish three relatively narrow "facts."  First, through this affidavit plaintiff is trying to show that "[a]ll ON Semiconductor facilities worldwide receive their instructions from ON Semiconductor's headquarters in Phoenix, Arizona for the installation of test systems that were sold by Eagle."  PSOF (doc. 77) at 2, ¶ 9 (citing Domke Aff.)  Second,  plaintiff is trying to establish that "[t]he selection of test equipment was an ON Semiconductor corporate decision and only ON Semiconductor's headquarters in Phoenix, Arizona had the

1  authority to make purchasing decisions for its test systems

2  installed anywhere in the world."  Id.  Third, again relying upon

3  an unspecified part of the Domke affidavit, plaintiff states that

4  "Domke, . . . , attended multiple meetings with both Eagle's

5  President, . . . , and Harris' President, . . ., for the purpose

6  of being briefed on the capabilities of Eagle's products and

7  services."  Id. at 2-3, ¶ 11 (citation omitted).

8       Given this limited scope of plaintiff's reliance upon the

9  Domke affidavit, Eagle's objections to any other averments

10 therein  are superfluous.  Thus, the court will confine its

11 analysis of this motion to strike the Domke affidavit to the

12 "facts" just enumerated.  When it does that the court is

13 compelled to strike paragraphs four, six, and seven[6] for failure

14 to comply with Fed. R. Civ. P. 56(e).  In its present form, Mr.

15 Domke's affidavit does not "affirmatively" show that he has

16 "personal knowledge" and "is competent to testify to the matters

17 stated" in those paragraphs.  See Fed. R. Civ. P. 56(e).

18 Therefore, the court grants Eagle's motion to strike those three

19 paragraphs.  Necessarily then, the court also sustains Eagle's

20 objections to paragraphs nine, ten and eleven of PSOF because

21 they are based exclusively upon the Domke affidavit, which the

22 court has struck in pertinent part.

23 . . .

24

25

---

26     [6]     In contravention of LRCIv 56.1(b), plaintiff did not refer to any
   specific part of Mr. Domke's affidavit to support the statements in its SOF.  The
27 court will overlook this omission, however, because it is easy to discern the
   paragraphs upon which plaintiff intended to rely.  In the future, however, the
28 court will not be so lenient in that "[t]he efficient management of judicial
   business mandates that parties submit evidence responsibly."  See Orr, 285 F.3d
   at 775.

1

### *e. Barcey Affidavit*

2       Plaintiff also is attempting to rely upon the affidavit of

3  Russell E. Barcey, an approximately 30 year employee of Texas

4  Instruments, formerly Burr-Brown, who allegedly began "working

5  with" plaintiff "in 1983." See Affidavit of Russell E. Barcey

6  (Nov. 7, 2007) (doc. 77) at 13, ¶¶ 1 and 3.  Eagle is moving to

7  strike this entire affidavit, once again broadly asserting lack

8  of foundation, lack of relevancy, and "improper opinion."  See

9  Def. Obj. to Barcey Aff. (doc. 102) at 1, ¶ 1; and 1-2 at ¶¶ 4

10 and 5.

11      This particular motion to strike need not detain the court

12 for long.  Technically this motion is redundant, as previously

13 explained, to the extent it is premised on lack of relevancy.

14 Nonetheless, even assuming the contents were otherwise

15 admissible, because the court agrees that the Barcey affidavit is

16 not relevant to the narrow issue of plaintiff's entitlement under

17 the Agreement to commissions in perpetuity, the court grants this

18 motion to strike.

19      The irrelevancy of the Barcey affidavit becomes even more

20 apparent taking into account the limited basis for which

21 plaintiff is offering it.  Plaintiff mentions the Barcey

22 affidavit in only two paragraphs of its SOF, and nowhere in its

23 response.  Without citing to any particular specific part of that

24 affidavit, in its SOF plaintiff declares that "[b]efore [it]

25 became the sales representative for Eagle to Burr-Brown/Texas

26 Instruments [("T.I.")], . . . . . . , [T.I.] had serious problems

27 with Eagle's services and support."  PSOF (doc. 77) at 3, ¶ 12

28 (citation omitted).  Plaintiff further declares that "[p]rior to

- 15 -

[it] coming to [T.I.] as the sales representative for Eagle, Eagle had not sold test equipment to [T.I.] in Arizona for at least ten years."  Id. at 3, ¶ 13 (citation omitted).  It is patently obvious that neither of these declarations, assuming they are otherwise properly supported by the Barcey affidavit, are in any way relevant to the issue of supposedly perpetual commissions under the Agreement.  Thus, the court grants Eagle's motion to strike the Barcey affidavit in its entirety (doc. 102).

### 2.  Authentication

In light of the foregoing rulings, seven "facts" in PSOF remain for the court's consideration.  To support six of those seven "facts," plaintiff is relying upon various documents, all of which Eagle is objecting to based upon lack of proper authentication.  Eagle reasons that those documents cannot support PSOF; and thus, in turn, plaintiff has not created a genuine issue of material fact sufficient to withstand Eagle's Rule 56 motion.

### a.  Governing Legal Standards

"Authentication is a 'condition precedent to admissibility, and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  Orr, 285 F.3d at 773 (quoting Fed. R. Evid. 901(a) (footnotes omitted).  "[D]ocuments authenticated through personal knowledge must be attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  Id. at 773-74 (internal quotation marks, citations and footnote omitted).  The Ninth Circuit has "repeatedly held

that 'documents which have not had a proper foundation laid to authenticate them cannot support [or defend] against a motion for summary judgment.'" <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting <u>Canada v. Blain's Helicopters, Inc.</u>, 831 F.2d 920, 925 (9th Cir. 1987)). "Consequently, objections predicated upon Federal Rule of Evidence 901 ["Requirement of Authentication or Identification"] are appropriate in the context of a motion for summary judgment." <u>Burch</u>, 433 F.Supp.2d at 1120.

By the same token, however, the court agrees with the observation in <u>Burch</u> that it is "questionable" whether, as here, "the authentication requirement should be applied to bar evidence when its authenticity is not actually disputed[.]" <u>See</u> <u>id.</u>  This proposition is "questionable" because: "[T]he Ninth Circuit has held that a district court's consideration of unauthenticated evidence in conjunction with a motion for summary judgment is harmless error when a competent witness with personal knowledge <i>could</i> have authenticated the document." <u>Id.</u> (citation omitted). Further, as the <u>Burch</u> court stressed, "Rule 56(e) requires only that evidence <i>would</i> be admissible, not that it presently <i>be</i> admissible." <u>Id.</u>  This harmless error "exception to the authentication requirement is particularly warranted in cases such as this where the objecting party does not contest the authenticity of the evidence submitted but nevertheless makes an evidentiary objection based on purely procedural  grounds." <u>Id.</u> (citing <u>Fenje v. Feld</u>, 301 F.Supp.2d 781, 789 (N.D.Ill. 2003) ("Even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good

faith in raising such an objection if the party nevertheless knows that the document is authentic.")).  Id. (footnote omitted).  That is because "[i]n such a situation, it would appear equally probable that the documents are what they purport to be as it is that they are not." Mason v. Sandham, 2007 WL 2531524, at *3 (E.D.Cal.) (citation omitted), adopted by, 2007 WL 3342196 (E.D.Cal. 2007).

Moreover, "the court cannot ignore the fact that a nonmovant in a summary judgment setting is not attempting to prove its case, but instead seeks only to demonstrate that a question of fact remains for trial." Burch, 433 F.Supp. at 1121.  Thus, in accordance with the "general principle . . . long ago adopted by the Ninth Circuit, whereby it treat[s] the opposing party's papers more indulgently than the moving party's papers[,]" the court declines to bar the challenged evidence for lack of authentication.  See id. (internal quotation marks, footnote and citations omitted).

Nonetheless, insofar as Eagle is raising other valid objections to the remaining purported "facts," which are discussed below, plaintiff cannot withstand summary judgment on the basis of these "facts."

### *i.  Facsimile Cover Sheet*

Plaintiff is relying upon a "facsimile cover sheet" dated January 15, 1999, to support its assertion that "In January 1999, Eagle's President, . . . , sent [plaintiff's] President, . . . to Singapore to meet with Eagle's Managing Director for Asia[.]" See PSOF (doc. 77) at 2, ¶ 5 (citing exh. A thereto).  Even if properly authenticated, this claimed fact has no bearing on the

- 18 -

issue of whether plaintiff is entitled to commissions in
perpetuity.  Hence, the court will disregard paragraph 5 of PSOF.

### ii.  Deposition Testimony

In its PSOF plaintiff recites that Eagle's CEO "testified in
his deposition . . . , that '85 percent of our product goes to
Asia.'" PSOF (doc. 77) at 2, ¶ 8 (citing "At page 30, lines 21-
21").  Again, ignoring the lack of foundation, the court will
disregard this "fact" because it has no bearing on the commission
issue which is the subject of this motion.  Furthermore, because
plaintiff did not provide excerpts, much less authenticated
excerpts, the court also is disregarding all references in
plaintiff's response  to deposition testimony.  See Orr, 285 F.3d
at 774-75.

### iii.  Plaintiff's Correspondence

Additionally, to support certain "facts" plaintiff relies
upon four different letters from its president, Mr. Harris, to
Eagle, including the termination letter.  As to each of these
letters, the court agrees with Eagle that pursuant to Fed. R.
Evid. 1002,[7] the letters themselves are the "best evidence" of
their contents.  Therefore, the court will ignore the
"generalizations by plaintiffs' counsel" in PSOF "as to the
contents" of those letters.  See Mann v. GTCR Golder Rauner,
L.L.C., 483 F.Supp.2d 884, 905 (D.Ariz. 2007) (internal quotation
marks and citation omitted).  In any event, a careful reading of
those letters shows that they are demands for commissions already
due, and do not mention commissions in perpetuity, which is the

---

[7]    That Rule states in pertinent part: "To prove the content of a
writing, . . . , the original writing, . . . is required, except as otherwise
provided in these rules or by Act of Congress."  Fed. R. Evid. 1002.

1   focus of this motion.   <u>See</u> PSOF (doc. 77), exhs. E, F, G and H

2   thereto.

3        As a result of these rulings on Eagle's motions to strike

4   and its objections to PSOF, as will soon become evident,

5   plaintiff is left with very little in the way of opposing facts.

6   ***II.  Eagle's Rule 56 Motion***

7        Having addressed Eagle's numerous evidentiary objections, as

8   well as its motions to strike, at last the court can proceed to

9   Eagle's Rule 56 motion.

10       ***A.  Propriety of "Partial Summary Judgment"?***

11       Relying solely upon Fed. R. Civ. P. 56(a), Eagle contends

12  that it is entitled to "partial summary judgment on the

13  determinative issue of whether the Agreement allows Harris to

14  passively collect commissions for sales <u>after</u> it terminated the

15  Agreement in 2000 until Eagle ceases doing business."  Mot. (doc.

16  44) at 1.   Before addressing the merits, there are several

17  procedural issues which the court must address.

18       The first is that Eagle is improperly relying upon

19  subsection (a) of Rule 56.  That subsection pertains, *inter alia*,

20  to "[a] party *seeking to recover* upon a claim," whereas

21  subsection (b) pertains to "[a] party *against whom a claim . . .*

22  *is asserted*[.]"  Fed. R. Civ. P. 56(a) and 56(b)(emphasis added).

23  As the defendant moving with respect to one of plaintiff's

24  claims, clearly Eagle should be relying upon subsection (b)

25  rather than upon subsection (a).  The court can easily overlook

26  this error because there was no prejudice to plaintiff; nor did

27  plaintiff raise this issue.

28

1    The court must also briefly consider the limited scope of

2   Eagle's motion.  "Rule 56(d) provides that if a judgment 'is *not*

3   *rendered* upon the *whole case* . . . the court at the hearing of

4   the motion, by examining the pleadings and the evidence before it

5   and by interrogating counsel, shall if practicable ascertain what

6   material facts exist without substantial controversy. . .  It

7   shall thereupon make an order specifying the facts that appear

8   without substantial controversy . . . and directing such further

9   proceedings in the action as are just.'"  Lies v. Farrell Lines,

10  Inc., 641 F.2d 765, 768-69 (9th Cir. 1981) (quoting Fed. R. Civ.

11  P. 56(d)) (footnote omitted) (emphasis added).  Thus, on its face

12  Rule 56(d) "allows a court to salvage some of the effort involved

13  in ruling on a failed motion for summary judgment by resolving

14  issues of law and fact for which a trial would not be necessary."

15  In re Hat, 2007 WL 2580688, at *8 (Bankr. E.D.Cal. Sept. 4,

16  2007).  It is less clear though whether a court "may make a

17  determination under [that] Rule . . . only after having been

18  presented with a motion for full summary judgment, having

19  considered it, and having determined that it cannot be

20  granted[,]" or whether relief may be granted under that Rule

21  where, as here, a party has "fil[ed] an independent motion

22  seeking adjudication of a particular issue, rather than filing a

23  motion for full summary judgment[.]"  See id.  Indeed, "[t]here is

24  a . . . split of authority as to whether a party can

25  independently move under Rule 56(d) for partial summary judgment

26  on parts of claims."  Advanced Semiconductor Materials America,

27  Inc. v. Applied Materials, Inc., 1995 WL 419747, at *2 (N.D.Cal.

28  July 10, 1995) (citations omitted).  However, "Ninth Circuit

1  district courts have found independent requests for partial

2  summary adjudication to be appropriate where the fact or issue to

3  be adjudicated is potentially case dispositive."  Hat, 2007 WL

4  2580688, at *9 (citing cases).

5      Here, the issue of whether plaintiff Harris can collect

6  sales commissions after termination of the Agreement is not

7  potentially case dispositive.  Nonetheless, "significant time

8  needed for trial would be saved[]" by early resolution of this

9  issue.  See id.  The relief which Eagle is requesting herein

10  "goes much further than seeking the resolution  of a merely

11  evidentiary matter en route to summary judgment[.]"  See id.

12  Likewise, this relief "goes much further than seeking . . . an

13  adjudication of an issue of fact which would not be dispositive

14  of an issue or even part of an issue."  Id.  Thus, despite the

15  fact that Eagle is not moving for full summary judgment, the

16  court will allow this independent motion seeking resolution of

17  the  commission issue identified above.  See Watson Laboratories,

18  Inc. v. Rhone-Poulenc Rorer, Inc., 178 F.Supp.2d 1099, 1122-1123

19  (C.D.Cal. 2001) (allowing "partial summary judgment" motion by

20  supplier of hypertension drug which sought to bar plaintiff from

21  recovering lost profit damages on sales occurring after

22  supplier's obligation had expired); The Los Angeles County

23  Employees Retirement Association v. Towers, Perrin, Forster &

24  Crosby, 2002 WL 32919576, at *2 (C.D.Cal. June 20, 2002) (finding

25  motion for "summary adjudication . . . proper" where defendants

26  sought "ruling on a single element of an affirmative defense,

27  which . . . ha[d] the effect of narrowing the issues on

28  [plaintiff's] damages claim[]").  A ruling favorable to Eagle

1  would shorten any potential trial as there would no need to

2  litigate the issue of sales commissions allegedly due in

3  "perpetua[ty][.]" <u>See</u> Co. (doc. 1) at 3, ¶ 10.

4      What is more problematic though is the fact that Eagle is

5  expressly moving for partial summary *judgment* as opposed to

6  partial summary *adjudication*.  Quoting Professor Moore with

7  approval, the Ninth Circuit in <u>Lies</u> astutely observed that

8  although "'[i]t is clear that Rule 56 authorizes a summary

9  adjudication that will often fall short of a final determination,

10 even of a single claim[,] . . . the term 'partial summary

11 judgment' as applied to an interlocutory summary adjudication is

12 often a misnomer.'" <u>Lies</u>, 641 F.2d at 769 n.3 (quoting 6 Moore's

13 Federal Practice (hereinafter Moore's) ¶ 56.20(3.-2) (2d ed.

14 1976)).  That term is a misnomer because although "[s]ome courts

15 have concluded that Rule 56 . . . permits *judgment* on a portion

16 of a single claim[,]" <u>Americans Disabled for Accessible Public</u>

17 <u>Transportation (ADAPT), Salt Lake Chapter v. Skywest Airlines,</u>

18 <u>Inc.</u>, 762 F.Supp. 320, 323 (D. Utah 1991) (emphasis added), those

19 courts have not taken into account the important distinction

20 between summary judgment and partial summary adjudication.  As

21 explained by Professor Moore, "partial summary judgment is merely

22 a determination before the trial that certain issues shall be

23 deemed established in advance of the trial." <u>Lies</u>, 641 F.2d at

24 769 n. 3 (quoting 6 Moore's ¶ 56.20(3.-2)).

25     "Partial summary judgments 'are by their terms

26 interlocutory[,]'" however.  <u>Camellia Park Homeowners Ass'n v.</u>

27 <u>Greenbriar Homes Co.</u>, 882 F.Supp. 150, 151 (N.D.Cal. 1995)

28 (quoting <u>Liberty Mut. Ins. Co. v. Wetzel</u>, 424 U.S. 737, 744

(1976)).  In fact, "'[s]ubdivision (d) of Rule 56 indicates clearly . . . that a partial summary 'judgment' is not a final judgment[.]'" <u>Id.</u> (quoting Notes of Advisory Committee on Rules, 1946 Amendment to Fed. R. Civ. P. 56(d)).  Thus, "'[b]y its terms, Rule 56(d) involves an adjudication of less than the entire action, and consequently does not purport to authorize a final and appealable judgment.'" <u>ADAPT</u>, 762 F.Supp. at 324 (quoting 10A Wright, Miller & Kane, Federal Practice and Procedure; Civil 2d § 2737 (citations omitted)).  Accordingly, a "partial summary judgment" does "not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." <u>Camellia Park</u>, 882 F.Supp. at 151 (quoting, *inter alia*, <u>Wetzel</u>, 424 U.S. at 742-44 & n.2); <u>see also</u> <u>ADAPT</u>, 762 F.Supp. at 324 n.2 ("A partial summary adjudication is not final, nor does it have any res judicata effect.")

In light of the foregoing, if Eagle ultimately prevails on this Rule 56 motion, in the court's view the more soundly reasoned approach is to grant partial summary adjudication, not partial summary judgment.  Proceeding in this way is consistent with the purpose of Rule 56(d) which is to "help[] to focus the issues to be litigated, thus conserving judicial resources." <u>See</u> <u>Advanced Semiconductor Materials America</u>, 1995 WL 419747, at *4 (citation omitted); <u>see also</u> <u>Camellia Park</u>, 882 F.Supp. at 151 (quoting Notes of Advisory Committee on Rules, 1946 Amendment to Fed. R. Civ. P. 56(d)) (Pretrial adjudication under Rule 56(d)

1  "'is more nearly akin to the preliminary order under Rule 16, and

2  likewise serves the purpose of speeding up litigation by

3  eliminating before trials matters where there is no genuine issue

4  of fact.'")

5      ***B.  Governing Legal Standards***

6      Pursuant to Fed.R.Civ.P. 56(c), a party is entitled to

7  summary judgment "if the pleadings, depositions, answers to

8  interrogatories, and admissions on file, together with the

9  affidavits, if any, show that there is no genuine issue as to any

10 material fact and that the moving party is entitled to a judgment

11 as a matter of law."  It is beyond dispute that "[t]he moving

12 party bears the initial burden to demonstrate the absence of any

13 genuine issue of material fact." Horphag Research Ltd. v. Garcia,

14 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted). "The

15 criteria of 'genuineness' and materiality'are distinct

16 requirements."   Nidds v. Schindler Elevator Corp., 113 F.3d 912,

17 916 (9th Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477

18 U.S. 242, 248 (1986)). "The requirement that an issue be 'genuine

19 relates to the quantum of evidence the plaintiff must produce to

20 defeat the defendant's motion for summary judgment." Id. "There

21 must be sufficient evidence 'that a reasonable jury could return

22 a verdict for the nonmoving party.'" Id. (quoting Anderson,477

23 U.S. at 248).  "As to materiality, the substantive law will

24 identify which facts are material."   Anderson, 477 U.S. at 248.

25 Here, as will be seen, the law of Illinois is the substantive

26 law.

27     "Once the moving party meets its initial burden, . . . , the

28 burden shifts to the nonmoving party to set forth, by affidavit

1  or as otherwise provided in Rule 56, specific facts showing that

2  there is a genuine issue for trial." Id. (internal quotation

3  marks and citations omitted).   This "[e]vidence must be

4  concrete and cannot rely on 'mere speculation, conjecture, or

5  fantasy.'" Bates v. Clark County, 2006 WL 3308214, at * 2

6  (D.Nev. Nov. 13, 2006) (quoting O.S.C. Corp. v. Apple Computer,

7  Inc., 792 F.2d 1464, 1467 (9th Cir. 1986)).   Similarly, "a mere

8  'scintilla' of evidence" is not sufficient "to defeat a properly

9  supported motion for summary judgment; instead, the nonmoving

10  party must introduce some significant probative evidence tending

11  to support the complaint." Fazio v. City & County of San

12  Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson,

13  477 U.S. at 249, 252). Thus, in opposing a summary judgment

14  motion it is not enough to "simply show that there is some

15  metaphysical doubt as to the material facts." Matsushita, 475

16  U.S. at 586 (citations omitted).

17      By the same token though, when assessing the record to

18  determine whether there is a "genuine issue for trial," the court

19  must "view the evidence in the light most favorable to the

20  nonmoving party, drawing all reasonable inferences in his favor."

21  Horphag, 475 F.3d at 1035 (citation omitted).   "Nevertheless,

22  inferences are not drawn out of the air, and it is the opposing

23  party's obligation to produce a factual predicate from which the

24  inference may be drawn." Yang v. Peoples Benefit Ins. Co., 2007

25  WL 1555749, at *7 (E.D.Cal. 2007) (citations omitted).

26      On a summary judgment motion, the court may not make

27  credibility determinations; nor may it weigh conflicting

28  evidence. See Anderson, 477 U.S. at 255. Thus, as framed by the

1   Supreme Court, the ultimate question on a summary judgment motion
2   is whether the evidence "presents a sufficient disagreement to
3   require submission to a jury or whether it is so one-sided that
4   one party must prevail as a matter of law." Id. at 251-52.

5       *C.  "Perpetual" Commissions*

6       On November 12, 1998, plaintiff Harris and defendant Eagle
7   entered into the Agreement which is the subject of this
8   litigation. See Declaration of Loretta Aidikonis (May 1, 2007)
9   (doc. 46), exh. A thereto; see also DSOF (doc. 45) at 1, ¶ 1; and
10  PSOF (doc. 77) at 1, ¶ 2.  Under the terms of the Agreement,
11  plaintiff was "appoint[ed]" to be Eagle's "Exclusive
12  representative in the geographic area described as Arizona and
13  New Mexico[.]" Id., exh. A thereto at 5.  The compensation
14  structure under that Agreement was dependent upon several
15  factors, such as where the "order[] [was] placed" and the nature
16  of the items ordered.  Id., exh. A thereto at 7, ¶ 4(a).  "For
17  orders placed . . . directly . . . from [plaintiff's region,[8]"
18  plaintiff was to receive a commission of "10% of the net system
19  base price as ordered." Id. (footnote added).  If a "system" was
20  "purchased from [Eagle] by [a] customer in another region and
21  *directly shipped* to the [plaintiff's] region," plaintiff would
22  "receive compensation of 3%[] of the net order to [Eagle] (less
23  other commissions paid or discounts given)." Id. (emphasis in
24  original).  Likewise, for "system[]s . . . purchased from the
25  region and shipped to another region, the [plaintiff] w[as] [to]
26

27       [8]     Although the Agreement expressly defines "geographic area," it does
28  not define "region."  Nor does the Agreement define "territory," another word
    arguably synonymous with "geographic area" and "region," and also used in the
    Agreement.

receive compensation of 3% of the net order to [Eagle] (less other commissions paid or discounts given)." _Id._  Finally, Eagle was to "provide commission[s] to [plaintiff] within 30 Days of receipt of final payment by [Eagle]." _Id._, exh. A thereto at 7, ¶ 4(e).

"[E]ither party" could terminate the Agreement "on ninety (90) days written notice" without cause. _Id._, exh. A thereto at 8, ¶ 7(a).  Continuing, the Agreement further states:  "In the event of a breach of any material provision of this agreement it may be terminated upon written notice by either party.  The notice must specify the breach upon which termination is based." _Id._, exh. A thereto at 8, ¶ 7(b).  "Upon termination[,]" although plaintiff "no longer ha[d] the right to act as" Eagle's representative, it could "continue selling any items in inventory at the time of termination[.]" _Id._ at 8, ¶ 7(c).  The primary focus of this motion is the following provision:

> _Neither_ [Eagle] nor [plaintiff] _shall by reason of the termination, be liable to the other for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales_, or on account of expenditures, investments, leases or commitments made in connection with this agreement. _Notwithstanding the foregoing, nothing contained in this paragraph shall be deemed to limit or otherwise restrict either parties_ [sic] _right to recover damages for the other parties_ [sic] _breach of any provision of this agreement._

_Id._ at 9, ¶ 7(f) (emphasis added).

The Agreement concluded with an integration clause prohibiting oral modification.  Instead, the Agreement expressly required that "[a]ny amendment [thereto] must be authorized in writing by qualified officers of both parties."  _Id._ at 10, ¶ 13.

1    By letter dated November 29, 2000, plaintiff's president,

2 Mike Harris, advised Len Foxman, Eagle's CEO, that he was

3 "terminat[ing] the [Agreement][.]"  Id., exh. B thereto at 13.

4 Mr. Harris explained:  "I have not received a commission check

5 from [Eagle] since April 2000, and have yet to receive any

6 commissions from bookings in the year 2000.  In addition, I

7 believe there are other commissions outstanding from 1999."  Id.

8 Harris added that he "fe[lt]" that he was "entitled to at least

9 3% of all business generated by [his] efforts at ON Semiconductor

10 . . . , and per the contract."  Id.

11    In that letter, Mr. Harris specifically "demand[ed] a full

12 accounting of the commissions due and for [Eagle] to issue a

13 commission check immediately."  Id.  Mr. Harris also indicated

14 that he was "aware" of "exist[ing] purchase orders which [Eagle]

15 ha[d] yet to deliver against and" that he "expect[ed] those

16 moneys to be paid out in accordance to the terms in the

17 contract."  Id.  In light of the foregoing, Mr. Harris

18 emphatically stated, that "[b]y failing to pay [plaintiff] for

19 the past 9 months, you have given me no choice but to terminate

20 the contract effective immediately."  Id.  Mr. Harris explicitly

21 informed Eagle that plaintiff was "no longer represent[ing]

22 [it]."  Id.

23    As noted earlier, plaintiff does not controvert the fact

24 that "Eagle paid [it] a total of $152,538.34 in commissions for

25 sales that were ordered prior to March 1, 2001, which was 90 days

26 after [plaintiff] terminated the Agreement on November 29, 2000."

27 DSOF (doc. 45) at 1, ¶ 3 (citations omitted).  In other words,

28 plaintiff has been "paid additional commissions for sales that

1   [it] had closed, but for which" it "had not yet been paid when it

2   sent the above quoted letter.  See Mot. (doc. 44) at 1.  Despite

3   those payments, based upon its theory that pursuant to the

4   Agreement commissions "are exclusive, perpetual and proprietary

5   and [that] the Agreement does not provide for [their]. . .

6   cessation, release or waiver . . . *for any reason*[,]" plaintiff

7   is claiming that it is entitled to additional unspecified "sales

8   commissions due and unpaid[.]" Co. (doc. 1) at 3, ¶ 10 (emphasis

9   added); and at 6, ¶ I.  Given Eagle's alleged "fail[ure] and

10  refus[al] to pay sales commissions[,]" plaintiff is alleging

11  breach of contract, unjust enrichment and demanding an

12  accounting.  Id. at 5, ¶¶ 22 and 24.

13      Plaintiff believes that Eagle is "mov[ing] for summary

14  judgment on [its] breach of contract claim."  Resp. (doc. 76) at

15  5.  Plaintiff misconstrues the scope of this motion.  As noted at

16  the outset, Eagle's motion is narrowly circumscribed.  It is

17  seeking partial summary adjudication on the "issue of whether the

18  Agreement allows [plaintiff] to passively collect commissions for

19  sales after it terminated the Agreement in 2000 until Eagle

20  ceases doing business."  Mot. (doc. 44) at 1.  The court will

21  confine its analysis to this discrete issue.

22      The parties agree that in accordance with the express terms

23  of the contract, Illinois law governs this dispute.[9]  See

24  Aidikonis Decl'n (doc. 46), exh. A thereto at 10, ¶ 11 ("Should

25  any conflicts arise concerning this agreement . . . . , action may

26

27      [9]      Therefore, to the extent the parties are relying upon law from other
    jurisdictions -- Eagle upon Ohio law as interpreted in Gadsby v. Norwalk
    Furniture Corp., 71 F.3d 1324 (7th Cir. 1995) and plaintiff upon Indiana law as
28  interpreted in Harold Wright Co., Inc. v. E.I. Du Pont De Nemours & Co., 49 F.3d
    308 (7th Cir. 1995) - the court concludes that they are not binding.

be brought to resolve the conflict according to the laws of the State of Illinois[.]")  "Under Illinois law, the Court must interpret the language of the contact in accordance with its plain meaning and must construe the contract as a whole." Continental Casualty Co. v. LaSalle RE Ltd., 511 F.Supp.2d 943, 947 (N.D.Ill. 2007) (citations omitted).  "The Court also must ascertain and give effect to the intent of the parties." Continental Casualty, 511 F.Supp.2d at 947 (citation omitted). There is a presumption under Illinois law that "[a] written contract . . . speak[s] the intention of the parties who signed it, and their intentions must be determined from the language used." Id. (citation omitted).  In this regard, "[u]nless a contract clearly specifies its own meanings, a court must interpret the words of the contract with their common and generally accepted meanings." William Blair & Co., LLC v. FI Liquidation Corp., 358 Ill.App.3d 324, 335 (2005) (citation omitted).   Stated somewhat differently, "[w]here a court can have reasonable confidence that it knows what the contract means, it can . . . decide the issue at hand on the basis of the contractual language alone." In re Ocwen, 2005 WL 1027118, at *4 (internal quotation marks and citation omitted).  Such is the case here.

     Illinois law further "presume[s] that all [contract] provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions." SMS Demag Aktiengesellschaft v. Material Sciences Corp., 2007 WL 4191937, at *17 (C.D.Ill. 2007) (internal quotation marks and citation omitted).  "Thus, a

1   contract must be construed such that none of its terms are
2   regarded as mere surplusage." Id. (internal quotation marks and
3   citation omitted).

4        "Additionally, a court cannot alter, change or modify the
5   existing terms of a contract or add new terms or conditions to
6   which the parties do not appear to have assented, write into the
7   contract something which the parties have omitted or take away
8   something which the parties have included." Continental
9   Casualty, 511 F.Supp.2d at 947 (internal quotation marks and
10  citation omitted). Further, where, as here, "a contract purports
11  on its face to be a complete expression of the parties' entire
12  agreement, courts will not add another term about which the
13  agreement is silent." Id. (citation omitted). Thus, "[t]he
14  Court's analysis begins with the language of the contract itself,
15  and '[i]f the language itself unambiguously answers the question
16  at issue, the inquiry is over.'" Id. (quoting Emergency Med.
17  Care, Inc. v. Marion Mem. Hosp., 94 F.3d 1059, 1060-61 (7th Cir.
18  1996) (interpreting Illinois law)).

19       "Construing the language employed in a contract is a matter
20  of law appropriate for summary judgment . . . , unless the
21  contract is ambiguous. Paul B. Episcope, Ltd. v. Law Offices of
22  Campbell and Di Vincenzo, 373 Ill.App.3d 384, 389 (internal
23  quotation marks and citation omitted), appeal denied, 225 Ill.2d
24  639 (2007). "Whether an ambiguity exists in a document is a
25  question of law." Id. (internal quotation marks and citation
26  omitted). Plainly, then, "[t]he initial inquiry for th[is]
27  district court is . . . whether the [Agreement] is ambiguous."
28  See   In re Ocwen Federal Bank FSB Mortgage Servicing Litigation,

1   2005 WL 1027118, at *4 (N.D.Ill. 2005)(citation omitted).  "A

2   contract is ambiguous if it is reasonably susceptible to more

3   than one meaning[.]" <u>Paul B. Episcope</u>, 373 Ill.App.3d at 389

4   (internal quotation marks and citation omitted); <u>see also</u>

5   <u>Clarendon American Insurance Co. v. Aargus Security Systems,</u>

6   <u>Inc.</u>, 374 Ill.App.3d 591, 595 (2007) (internal quotation marks

7   and citation omitted) ("A contract term is ambiguous if it can

8   reasonably be interpreted in more than one way due to the

9   indefiniteness of the language or due to it having a double or

10  multiple meaning.") However, "[a]ny ambiguity claimed has to be

11  asserted reasonably and plausibly."   <u>Id.</u>  "The interpretation of

12  the party contending for ambiguity needs to be equally plausible

13  to the construction of the party arguing the contract is

14  unambiguous."  <u>Id.</u> (citation omitted).

15       Here, Eagle contends that the Agreement is unambiguous:

16  plaintiff is not entitled to commissions in perpetuity.  In

17  making this argument, Eagle stresses that section 7(f) of the

18  Agreement clearly states, in part, that "[n]either" party "by

19  reason of termination" shall "be liable to the other . . . on

20  account of the loss of prospective profits or anticipated

21  sales[.]" Aidikonis Decl'n (doc. 46), exh. A thereto at 9,

22  ¶ 7(f).  Not only that, as  Eagle is quick to point out, the

23  Agreement does not contain any "express . . . provision for the

24  payment of commissions *ad infinitum*."  Mot. (doc. 44) at 6

25  (internal quotation marks omitted).[10]  Rather, plaintiff's

26

27       [10]    To support its position, Eagle relies heavily upon <u>Gadsby v. Norwalk</u>
    <u>Furniture Corp.</u>, 71 F.3d 1324 (7th Cir. 1995).  Although Eagle explicitly states
28  that the <u>Gadsby</u> Court was interpreting Illinois law, Mot. (Doc. 44) at 6; and
    Reply (doc. 96) at 7, it was not.  The <u>Gadsby</u> court was interpreting Ohio law.
    <u>See id.</u> at 1327.  Therefore, <u>Gadsby</u> does not apply here.

1  entitlement to commissions was tied directly to its status as

2  Eagle's manufacturer's representative, for which plaintiff had

3  certain enumerated "responsibilities."   See Aidikonis Decl'n

4  (doc. 46), exh. A thereto at 6, §(b).   Thus, when plaintiff

5  "formal[ly] notifi[ed]" Eagle that it was "no longer

6  represent[ing]" Eagle and that plaintiff was "terminat[ing] the

7  [Agreement] effective immediately[,]" id., exh. B thereto at 13,

8  Eagle took the position (which it adheres to on this motion) that

9  plaintiff's "contractual right to receive commissions" ended.

10  See Mot. (doc. 44) at 7.

11      Plaintiff retorts that sections four ("Compensation and

12  Payment Terms") and seven ("Termination") of the

13  Agreement "are ambiguous and open to multiple interpretations[,]"

14  thus precluding partial summary adjudication.   See Resp. (Doc.

15  76) at 3.   Yet, plaintiff does not elaborate upon this argument

16  at all.   See id.   This omission is significant.   Just as "an

17  ambiguity is not created merely because the parties disagree[,]"

18  Paul B. Episcope, 373 Ill.App.3d at 389 (internal quotation marks

19  and citation omitted), it is not enough to merely state that a

20  contract term is ambiguous.   To the contrary, "[a] party

21  asserting that a contract is ambiguous has the burden of

22  'convinc[ing] a judge that this is the case.'"   In re Ocwen, 2005

23  WL 1027118, at *4 (quoting Murphy v. Keystone Steel & Wire Co.,

24  61 F.3d 560, 565 (7th Cir. 1995)).   This is done by "produc[ing]

25  objective facts, not subjective and self-serving testimony, to

26  show that a contract which looks clear on its face is actually

27  ambiguous."   Murphy, 61 F.3d at 565 (citations omitted).

28

1    Plaintiff has not met this burden of production.  Nor has

2    plaintiff, as it must, come forward with a reasonable and

3    plausible interpretation of the Agreement which would support its

4    view that it is entitled to commissions thereunder in perpetuity.

5    Indeed, plaintiff does not advance *any* alternative

6    interpretations of the Agreement, much less a reasonable and

7    plausible one.

8    Focusing upon the language of the Agreement, plaintiff

9    impliedly asserts that the following language creates an

10   ambiguity:

11             Notwithstanding the foregoing, nothing contained
             in this paragraph shall be deemed to limit or
12           otherwise restrict either parties [sic] right to
             recover damages for the other parties [sic] breach
13           of any provision of this agreement.

14   See Aidikonis Decl'n (doc. 46), exh. A thereto at 9, § 7(f).  The

15   fundamental weakness with this position is that, again, plaintiff

16   does not explain how this supposed ambiguity arises.

17   Moreover, the just quoted provision is not susceptible of

18   more than one reasonable interpretation, either when read in

19   isolation or in the broader context of section seven (f) as a

20   whole.  Plaintiff's November 29, 2000, letter to Eagle

21   unequivocally states that it is "terminat[ing] the contract

22   effective immediately[.]" Id., exh. B thereto at 13.  Once it did

23   that, under the plain terms of the Agreement, Eagle is not

24   "liable to [plaintiff] for compensation, . . . on account of the

25   loss of prospective profits on anticipated sales[.]"  Id., exh. A

26   thereto at 9, § 7(f).  This language is unequivocal; it does not

27   have double or multiple meanings.  Plaintiff's suggestion to the

28   contrary is not persuasive.

1   Not only that, requiring payment of commissions in

2   perpetuity, as plaintiff urges, would render meaningless the

3   first sentence of section 7(f) prohibiting recovery for "the loss

4   of prospective profits or anticipated sales" if the Agreement is

5   terminated.  See Aidikonis Decl'n (doc. 46), exh. A thereto at 9,

6   ¶ 7(f).  Such a reading is contrary to the settled Illinois

7   contract principles outlined herein.  Likewise, "interpreting the

8   Agreement as requiring perpetual commissions would deprive the

9   termination provisions of any practical effect and render them

10  meaningless."  Mot. (doc. 44) at 8.  Finally interpreting the

11  Agreement as plaintiff urges, to allow for commissions in

12  perpetuity, would violate the "well settled" principle that

13  "'courts are not in the business of rewriting contracts to

14  appease a disgruntled  party unhappy with the bargain it

15  struck.'"  See SMS Demag, 2007 WL 4191937, at *10 (quoting Davis

16  v. G.N. Mortgage Corp., 396 F.3d 889, 893 (7th Cir. 2005)

17  (applying Illinois law)) (other citation omitted).

18     Plaintiff attempts to create an ambiguity where none exists

19  by resorting to extrinsic evidence in several forms.  For

20  example, supposedly plaintiff's president testified that the

21  November 29, 2000 letter was "a demand for payment of commissions

22  due[,]" whereas supposedly Eagle's CEO construed that letter as a

23  voluntary termination of the Agreement.  Resp. (doc. 76) at 5.

24  Overlooking the lack of proper authentication,[11] still, it would

25

26        [11]    "A deposition or an extract therefrom is authenticated in a motion
    for summary judgment when it identifies the names of the deponent and the action
27  and includes the reporter's certification that the deposition is a true record
    of the testimony of the deponent."  Orr, 285 F.3d at 774 (citations and footnote
28  omitted).  "Ordinarily, this would have to be accomplished by attaching the cover
    page of the deposition and the reporter's certification to every deposition
    extract submitted."  Id.  Plaintiff did not do that here.  In fact, plaintiff did

1   be improper for the court to consider this deposition testimony.

2   That is so because plaintiff is putting the proverbial cart

3   before the horse.   Use of extrinsic evidence is permissible to

4   resolve an ambiguity.   See <u>Cambridge Engineering, Inc. v. Mercury</u>

5   <u>Partners 90</u>, 2007 WL 4302511, at *9 (Ill.App. 1 Dist. 2007).

6   However, "when the language of a contract is unambiguous," as it

7   is here, there is no need to "resort[] to extrinsic evidence."

8   <u>Id.</u> (citations omitted).

9       Along those same lines, plaintiff cannot defeat Eagle's

10  motion on the basis of paragraph 22 of PSOF.   In that paragraph,

11  plaintiff claims that after receiving the November 29, 2000

12  letter, Eagle called, "requesting that [plaintiff] continue sales

13  efforts on behalf of Eagle and . . . promis[ing] that . . .

14  commission payments . . . would be brought current and continue."

15  PSOF (doc. 77) at 22 (citation omitted).   "In reliance" on that

16  "promise to promptly pay sales commissions . . . for past and

17  future sales activity," plaintiff claims that it "agreed to

18  continue its sale s efforts on behalf of Eagle."   <u>Id.</u> (citation

19  omitted).   The court is excluding this evidence, however, because

20  although plaintiff is relying upon the Harris affidavit to

21  support this statement, but it did not cite to any particular

22  paragraphs in that affidavit.   See <u>Orr</u>, 285 F.3d at 775 n. 14 (on

23  a summary judgment motion, "when a party relies on . . . an

24  affidavit without citing to paragraph numbers[,] . . . the trial

25  court may in its discretion exclude the evidence[]").   And, once

26  again, extrinsic evidence is not relevant when a contract is

27  unambiguous, as is the Agreement at issue herein.

28

not even include any deposition extracts; it simply cites to them.

1   Similarly there is no need, as plaintiff urges, to resort to

2   the assistance of an independent industry expert to inform the

3   trier of fact . . . of industry practices[.]" Resp. (doc. 76) at

4   3.   Indeed, Illinois courts have consistently held "that in the

5   absence of ambiguity[,] contract interpretation is a question of

6   law for which expert testimony would not be appropriate."

7   William Blair, 358 Ill.App.3d at 338-39 (citing cases).

8   To avoid the obvious, plaintiff raises the specter that this

9   Agreement was orally modified to expand its "sales region . . .

10  to include Asia."  See Resp. (doc. 76) at 7.  This argument, as

11  with much of plaintiff's opposition, is not responsive to the

12  narrow issue before the court on this motion, *i.e.* plaintiff's

13  claimed entitlement to commissions in perpetuity under the

14  Agreement.  As the court has just found, plaintiff is not

15  entitled to commissions in perpetuity; that is so regardless of

16  how "sales region" is defined.

17  As another means of avoiding the plain language of the

18  Agreement, plaintiff invokes the procuring cause doctrine.  Under

19  that doctrine, "a party 'may be entitled to commission on sales

20  made after termination of a contract if that party procured the

21  sales through its activities prior to termination.'"  Hammond

22  Group, Ltd. v. Spalding & Evenflo Companies, Inc., 69 F.3d 845,

23  850 (7th Cir. 1995) (citing, *inter alia*, Scheduling Corp. Of

24  America v. Massello (Massello II), 151 Ill.App.3d 565 (1987)).

1   Assuming *arguendo* that this doctrine otherwise applies,[12] it,

2   too, is non-responsive to the issue of perpetual commissions.

3        Lastly, plaintiff contends that regardless of the plain

4   language of the Agreement under the Illinois Sales Representative

5   Act, 820 ILSC § 120/0.01 *et seq.* and its Arizona counterpart, ARS

6   § 44-1798 *et seq.,* it is entitled to commissions in perpetuity.

7   The fundamental flaw with this argument is that plaintiff's

8   complaint does not mention either of these Acts; and a

9   "[p]laintiff, . . . , cannot raise a new theory of liability in

10  opposition to summary judgment." <u>Tenet Healthsystem Desert, Inc.</u>

11  <u>v. Fortis Ins. Co., Inc.</u>, 520 F.Supp.2d 1184, 1193 n. 9 (C.D.Cal.

12  2007) (citing <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1292

13  (9th Cir. 2000)).  Consequently, plaintiff's reliance upon these

14  Acts to defeat this motion for partial summary adjudication is

15  unavailing.

16       In short, for all of these reasons, the court grants

17  defendant's motion for partial summary adjudication finding that

18  plaintiff is not "allow[ed] . . . to passively collect

19  commissions  for sales <u>after</u> it terminated the Agreement in 2000

20  until [defendant] ceases doing business." <u>See</u> Mot. (doc. 44) at

21  1.

22                         ***Conclusion***

23       For the reasons set forth above, the court hereby

24  _____

         [12]     This assumption is highly doubtful, especially at this point where
25  plaintiff has not "offer[ed] any evidence tying specific invoices to efforts"
    made by it.  <u>See</u> <u>Hammond</u>, 69 F.3d at 850.  Here, all that plaintiff has done is
26  to baldly refer to accounts listed by name only it its complaint, without
    reference to time frame or region.  This is an insufficient basis upon which to
27  allow recovery under the procuring cause doctrine. <u>See</u> <u>id.</u> (under Illinois law,
    procuring cause doctrine did not entitle a manufacturer's representative to
28  recover commissions which arose after contract termination where the
    representative "did not offer any evidence tying specific invoices to [its]
    efforts").

1       (1) GRANTS defendant's motion to strike the affidavit of K.
2  Michael Harris (doc. 98) to the extent set forth herein;

3       (2) GRANTS defendant's motion to strike the affidavit of
4  Valerie Mack (doc. 99), with the exception of paragraphs one and
5  seven;

6       (3) GRANTS defendant's motion to strike the "Verified
7  Statement of William Wu (doc. 100);

8       (4) GRANTS defendant's motion to strike paragraphs four, six
9  and seven of the affidavit of Douglas C. Domke (doc. 101);

10       (5) GRANTS defendant's motion to strike the affidavit of
11  Russell E. Barcey (doc. 102); and

12       (6) GRANTS defendant's motion for partial summary
13  adjudication finding that plaintiff is not "allow[ed] . . . to
14  passively collect commissions for sales <u>after</u> it terminated the
15  Agreement[.]"  <u>See</u> Mot. (doc. 44) at 1.

16       DATED this 5th day of February, 2008.

17

18

19  _____
20                     Robert C. Broomfield
                        Senior United States District Judge

21

22

23

24

25  Copies to all counsel of record

26

27

28