WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Harris Technical Sales, Inc., an Arizona corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. CIV 06-02471-PHX-RCB |
| vs. | ) ) | O R D E R |
| Eagle Test Systems, Inc., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

Currently pending before the court are three motions for extensions of time (docs. 69, 72 and 74); a motion to compel production of documents by plaintiff, Harris Technical Sales, Inc. ("Harris") (doc. 78); a motion for summary judgment by defendant Eagle Test Systems, Inc. ("Eagle") (doc. 81); a motion for a sealing order by Harris (doc. 90); and Harris' motion to preclude Eagle's expert (doc. 92).  Finding oral argument unnecessary, the court denies Eagle's request in this regard.

### ***Background***

In <u>Harris Technical Sales, Inc. v. Eagle Test Systems, Inc.</u>,

2008 WL 343260 (D.Ariz. 2008), the court set forth the general

background of this contract dispute, familiarity with which is

assumed.  For ease of reference, however, those undisputed facts

are repeated below, although not verbatim.  Cites have been updated

to reflect the current state of the record.  Other facts will be

more fully developed herein as necessary to resolve a given issue.

On November 12, 1998, Harris and Eagle entered into a

"Manufacturers Representative Agreement" ("the Agreement").  See

Larsen Decl'n (doc. 85), exh. 15 thereto at ET000001.  Under that

Agreement, Harris was "appoint[ed]" to be Eagle's "Exclusive

representative in the geographic area described as Arizona and New

Mexico[.]"[1]  Id.  The compensation structure thereunder was

dependent upon several factors, such as where the "order[ ][was]

placed" and the nature of the items ordered.  Id., exh. 15 thereto

at ET000003, ¶ 4(a). "For orders placed ... directly ... from

[Harris'] region," Harris was to receive a commission of "10% of

the net system base price as ordered."  Id.  If a "system" was

"purchased from [Eagle] by [a] customer in another region and

*directly shipped* to the [Harris'] region," Harris would receive a

lesser commission of essentially three percent.  Id. (emphasis in

original).  Harris would receive that same three percent commission

for "system[s ] ... purchased from the region and shipped to

another region[.]"  Id.

Payment of commissions to Harris was to be "provide[d] . . .

within 30 Days of receipt of final payment by [Eagle]."  Id., exh.

15 thereto at ET000003, ¶ 4(e).  "[E]ither party" could terminate

---

[1]     For ease of reference, hereinafter the court shall refer to this area
as Harris' "sales territory."

1   the Agreement "on ninety (90) days written notice" without cause.

2   Id., exh. 15 thereto at ET000004, ¶ 7(a).  As to termination, the

3   Agreement further states: "In the event of a breach of any material

4   provision of this agreement it may be terminated upon written

5   notice by either party. The notice must specify the breach upon

6   which termination is based."  Id., exh. 15 thereto at ET000004, ¶

7   7(b).  "Upon termination[,]" the Agreement was explicit: Harris "no

8   longer ha[d] the right to act as" Eagle's representative, but it

9   could "continue selling any items in inventory at the time of

10  termination [.]" Id., exh. 15 thereto at ET000004, ¶ 7(c).  The

11  Agreement concluded with an integration clause which will be more

12  fully discussed below in addressing the alleged subsequent oral

13  modification.

14      By letter dated November 29, 2000, plaintiff's president, Mike

15  Harris, advised Eagle's President and Chief Executive Officer, Len

16  Foxman, that "By failing to pay [Harris] for the past 9 months, you

17  have given me no choice but to terminate the [Agreement] effective

18  immediately."[2]  Foxman Decl'n (doc. 83), exh. A thereto at

19  ET000010.  Mr. Harris explained: "I have not received a commission

20  check from [Eagle] since April 2000, and have yet to receive any

21  commissions from bookings in the year 2000.  In addition, I believe

22  there are other commissions outstanding from 1999."  Id.  Harris

23  added that he "fe[lt]" that he was "entitled to at least 3% of all

24  business generated by [his] efforts at ON Semiconductor . . . , and

25  per the contract."  Id.

26      In that notification letter,  Mr. Harris specifically

27  _____

28      [2]      Hereinafter the court will refer to this as the notification letter.

1  "demand[ed] a full accounting of the commissions due and for

2  [Eagle] to issue a commission check immediately." _Id._  Mr. Harris

3  also indicated that he was "aware" of "exist[ing] purchase orders

4  which [Eagle] ha[d] yet to deliver against and" that he "expect[ed]

5  those moneys to be paid out in accordance to the terms in the

6  [Agreement]." _Id._  Evidently in light of the foregoing, Mr.

7  Harris then explicitly informed Eagle that plaintiff was "no longer

8  represent[ing][Eagle]." _Id._

9      Eventually, Harris brought the present action against Eagle

10  for breach of contract; unjust enrichment and "demand for

11  accounting[.]" Co. (doc. 1) at 5:23.  In _Harris_, this court granted

12  defendant's motion for partial summary adjudication on the issue of

13  so-called perpetual commissions, finding that Harris was not

14  "allow[ed] . . . to passively collect commissions for sales _after_

15  it terminated the Agreement in 2000 until [defendant] ceases doing

16  business." _Harris_, 2008 WL 343260, at *18 (internal quotation

17  marks and citation omitted).  Eagle is moving for summary judgment

18  on Harris' remaining claims, focusing heavily on the statute of

19  limitations issue.  Because that issue is potentially dispositive,

20  the court will first address Eagle's summary judgment motion.  If

21  any or all of Harris' claims survive Eagle's statute of limitations

22  defense, the court will address the merits of such claims; and, if

23  necessary, the remaining motions.

### ***Discussion***

### ***I.  Eagle's Summary Judgment Motion***

26      The court assumes familiarity with its prior decision

27  in _Harris_, containing a fairly comprehensive overview of summary

28  judgment standards, and sees no need to repeat that discussion

1   herein.  See Harris, 2008 WL 343260, at *11 – *12.  Instead, the

2   court will highlight particularly relevant standards herein as

3   necessary.  The court will likewise, at the appropriate juncture,

4   highlight its prior evidentiary rulings which bear directly on this

5   summary judgment motion.

6        Eagle contends that all three causes of action are time

7   barred.  The Agreement expressly provides that Illinois law governs

8   this dispute.  Larsen Decl'n (doc. 85), exh. 15 thereto at ET

9   000006, ¶ 11 ("Should any conflicts arise concerning this agreement

10  which cannot be resolved by mutual agreement, action may be brought

11  to resolve the conflict according to the law of the State of

12  Illinois, U.S.A.") Therefore, the court must look to Illinois law

13  to resolve the statute of limitations issues herein.

14        ***A.  Breach of Contract***

15             ***1.  Statute of Limitations***

16        Under Illinois law, the statute of limitations is different

17  depending upon whether a contract is written or oral.  For "written

18  contracts," an action must be "commenced within 10 years next after

19  the cause of action accrued[,]" 735 ILCS 5/13-206; whereas "actions

20  on unwritten contracts[]" must "be commenced within 5 years next

21  after the cause of action accrued."  735 ILCS 5/13-205.  What

22  constitutes a "written contract" for statute of limitations

23  purposes under Illinois law is "strictly interpreted."  Ramirez v.

24  Palisades Collection LLC, 2008 WL 2512679, at *2 (N.D.Ill. 2008)

25  (citing, inter alia, Held v. Held, 137 F.3d 998, 1001 (7th Cir.

26  1998))).  "'A contract is considered written for purposes of the

27  statute of limitations if all essential terms are reduced to

28  writing and can be ascertained from the instrument itself.'"  Held,

1  137 F.3d at 1001 (quoting Toth v. Mansell, 207 Ill.App.3d 665, 669,

2  (1990)).  On the other hand, "'[i]f parol evidence is necessary to

3  make the contract complete, then the contract must be treated as

4  oral for purposes of the statute of limitations.'" Id. (quoting

5  Toth, 207 Ill.App.3d at 669); see also Ramirez, 2008 WL 2512679, at

6  *2 (citing Armstrong v. Guigler, 174 Ill.2d 281, 294 (1996)) ("If

7  the existence of the contract or an essential term of the contract

8  must be proven by parol evidence, the contract is deemed to be an

9  oral contract; the five-year statute of limitations applies.")

10       There is no dispute as to the existence of a contract between

11 Harris and Eagle.  The dispute centers around whether that

12 Agreement is written or unwritten for statute of limitations

13 purposes.  Based upon Harris' contention that the Agreement was

14 subsequently orally modified to expand the sales territory to

15 include Asia, Eagle maintains that the Agreement is oral, hence the

16 five year statute of limitations applies.  In other words, because

17 it believes that "parole evidence is necessary to make the contract

18 complete," Eagle argues that the Agreement is subject to Illinois'

19 five year statute of limitations for oral contracts.  Taking the

20 opposite view, Harris maintains that because the Agreement

21 "include[s] all necessary contractual terms[,]" it is a written

22 contract to which the ten year statute of limitations applies.

23       The Agreement has an integration clause prohibiting oral

24 modification.  More specifically, the Agreement required that

25 "[a]ny amendment [thereto] must be authorized in writing by

26 qualified officers of both parties."  Larsen Decl'n (doc. 85), exh.

27 15 thereto at ET000006, ¶ 11.  Eagle asserts that as a matter of

28 law this provision has not been waived because Harris has not come

- 6 -

1  forth with clear and convincing evidence of a subsequent oral

2  modification.

3      Agreeing that the standard of proof is clear and convincing

4  evidence, Harris contends that it has met that burden.  See Resp.

5  (doc. 139) at 7:9-16; and at 14:25-26.  Despite a relatively

6  voluminous record, Harris relies upon only three items to establish

7  a subsequent oral modification:  "1) [its] Asian travel

8  instructions given by Defendant, 2) the statement of Defendant's

9  former Managing Director for Asia, William Wu and 3) the affidavit

10 of Douglas C. Domke regarding the [']worldwide' purchases by ON

11 Semiconductor."  Id. at 15:1-3 (citing exh. C to PSOF).  Eagle

12 succinctly retorts that none of the foregoing is admissible; and

13 even if it were, it does not "pertain[] to" this "purported

14 modification."  Reply (doc. 164) at 7:16.  Eagle's position is

15 well-taken.

16     "A contract modification is a change in one or more respects

17 which introduces new elements into the details of the contract and

18 cancels others, but leaves the general purpose and effect

19 undisturbed."  Household Financial Services, Inc. v. Coastal

20 Mortgage Services, Inc., 152 F.Supp.2d 1015, 1022 (N.D.Ill. 2001)

21 (citation omitted).  "In Illinois, oral contract modifications are

22 permissible even if the contract contains a provision banning oral

23 modification."  Czapla v. Commerz Futures, LLC, 114 F.Supp.2d 715,

24 718 (N.D.Ill. 2000) (citations omitted).  "[B]ecause an oral

25 modification is seen as a waiver of the writing requirement[,]"

26 Harris "has the burden of showing the oral modification by clear

27 and convincing evidence."  Shaull Equipment & Supply Co. v. Rand,

28 2004 WL 3406088, at *4 (M.D.Pa. 2004) (citing, inter alia, Czapla,

1    114 F.Supp.2d at 718; and <u>Roboserve, Inc. v. Kato Kagaku Co.</u>, 78

2    F.3d 266, 277 (7th Cir. 1996)).  That standard "requires *more*

3    *evidence than a preponderance* but less than that required for proof

4    beyond a reasonable doubt."  <u>Shaull Equipment</u>, 2004 WL 3406088, at

5    *4 (citing, *inter alia*, <u>In re. D.T.</u>, 212 Ill.2d 347 (2004))

6    (footnote omitted)) (emphasis added).  Given that plaintiff Harris

7    has the burden of proof at trial on the oral modification issue, it

8    is appropriate to apply this standard at the summary judgment

9    stage.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252

10   (1986) ("[T]he inquiry involved in a ruling on a motion for summary

11   judgment . . . necessarily implicates the substantive evidentiary

12   standard of proof that would apply at the trial on the merits.")

13        The court has previously considered the sufficiency, albeit in

14   a slightly different context, of the three sources of proof upon

15   which Harris relies to show subsequent oral modification, and

16   concomitant waiver of the integration clause.  <u>See</u> <u>Harris</u>, 2008 WL

17   343260, at *5-*8.  At this juncture the evidentiary concerns are

18   somewhat different than they were in <u>Harris</u>.  Thus to the extent

19   necessary, the court will revisit the sufficiency of plaintiff's

20   evidence in this regard.

21        First, Harris is relying upon "his Asian travel instructions

22   given by Defendant[.]" Resp. (doc. 139) at 15:1.  In particular, in

23   its SOF plaintiff states that "[i]n January, 1999, Eagle's

24   President, Len Foxman, sent Harris' President, Mike Harris, to

25   Singapore to meet with Eagle's Managing Director for Asia, William

26   Wu."  PSOF (doc. 140), at 2, ¶5 (citing exhs. A and B thereto).

27   Overlooking for the moment the deficiencies in the cited exhibits,

28   this statement does not even come close to showing by "clear and

convincing" proof that the parties orally agreed to modify the
Agreement to expand Harris' sales territory to include Asia.  Mr.
Harris could have been sent on that trip for any number of reasons.
The court declines to speculate as to the purpose of that trip.
Indeed, it would be improper for the court to do so.  See Soremekun
v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007)
(internal quotation marks and citation omitted) ("[M]ere allegation
and speculation do not create a factual dispute for purposes of
summary judgment[.]")

     Moreover, as just alluded to, the evidence upon which
plaintiff is relying to support this claimed "fact" is deficient.
Plaintiff first cites to a January 15, 1999, "Facsimile Cover
Sheet" apparently from "Miriam F. Becerra," Eagle's "Executive
Manager Corporate & Sales Administration[.]" PSOF (doc. 140), exh.
A thereto at ET01006.  That Cover Sheet provides Mr. Harris with
Mr. Wu's contact information in Singapore, such as his telephone
and fax numbers, as well as his office address.  Id.  That Cover
Sheet further advises Mr. Harris that Eagle's President would "be
speaking with [Mr.] Wu th[at] weekend" and that Ms. Becerra would
be "faxing [Mr. Harris'] schedule" to Mr. Wu.  Id.

     The first flaw with this exhibit is that it has not been
authenticated.  The court will disregard this lack of
authentication, as it did previously.  See Harris, 2008 WL 343260,
at *8 (internal quotation marks and citations omitted) (invoking
the "harmless error exception" to the authentication requirement,
including with respect to this same fax cover sheet, where the
objection was "based purely on procedural grounds").  The court
will not disregard the second flaw with that Cover sheet, however,

1   which is that it does not even tend to show, much less by clear and

2   convincing evidence, that the parties agreed to modify the

3   Agreement to include Asia as part of Harris' sales territory.

4        On its face, all this document does is provide Mr. Harris with

5   contact information for Mr. Wu in Singapore.  That is all.

6   Plaintiff asserts that "[i]t is important to . . . note" that the

7   Fax Cover Sheet indicates that Mr. Foxman "will be 'speaking with

8   Mr. Wu this weekend[,']" but plaintiff utterly fails to explain the

9   import of that statement.  Resp. (doc. 139) at 7:14; and PSOF (doc.

10   140), exh. A thereto at ET1006.  Given the general nature of that

11   statement, plaintiff's failure to explain its supposed importance

12   is all the more problematic.  Mr. Foxman could have spoken with Mr.

13   Wu about countless matters, not necessarily expansion of Harris'

14   sales territory.

15        Further, despite the fact that in its SOF plaintiff refers to

16   Mr. Wu as "Eagle's Managing Director For Asia," PSOF (doc. 140) at

17   2, ¶ 5, this statement is unsubstantiated, partially because Mr.

18   Wu's statement is not properly before the court.  Thus, given the

19   current state of the record, Mr. Wu's affiliation is uncertain.

20   So, once again the court declines to impermissibly speculate.  It

21   cannot find, on the basis of this Fax Cover Sheet alluding to a

22   then pending Singapore trip by Mr. Harris, clear and convincing

23   evidence that the parties agreed to expand Harris' sales territory,

24   beyond the scope of the written Agreement, to include Asia.

25        Next, Harris attempts to rely upon Mr. Wu's statement, as it

26   did in response to Eagle's earlier motion on the issue of

27   "perpetual" commissions.  As thoroughly explained in _Harris_,

28   however, that statement was not properly executed in conformity

1  with 28 U.S.C. § 1746.  <u>See</u> <u>Harris</u>, 2008 WL 343260 at *5 – *6.  As

2  a result, in <u>Harris</u> this court granted Eagle's motion to strike Mr.

3  Wu's statement and declined to consider that "inadmissible evidence

4  in opposition to Eagle's Rule 56 motion."  <u>Id.</u> at *6 (citation

5  omitted).  Nothing has changed from that time to this.  Harris is

6  relying upon the exact same statement by Mr. Wu, making no attempt

7  to remedy the procedural defects outlined in <u>Harris</u>.  Thus, the

8  court abides by its prior ruling and will not consider Mr. Wu's

9  statement in connection with Eagle's current summary judgment

10  motion.

11       Third, plaintiff Harris explicitly refers to "the affidavit of

12  Douglas C. Domke regarding the 'worldwide' purchases by ON

13  Semiconductor[]" to show clear and convincing evidence of an oral

14  modification.  Resp. (doc. 139) at 15:2-3 (citing exh. C thereto).

15  Plaintiff does not cite to any specific part of Mr. Domke's

16  affidavit though, much less explain how the foregoing statement is

17  indicative of expanding Harris' sales territory to include Asia.

18  Assuming <i>arguendo</i> that plaintiff is relying upon paragraph five of

19  the Domke affidavit,[3] that paragraph reads as follows:

20               At all times when [defendant] Eagle . . .
             was engaged in doing business with ON
21           Semiconductor, it was my understanding that
             [plaintiff] Harris . . . was getting full
22           credit for all Eagle['s] . . . sales worldwide
             for all ON Semiconductor's facilities.
23

24  PSOF (doc. 140), exh. C thereto (Affidavit of Douglas C. Domke) at

25  12, ¶ 5.  This affidavit does not mention Asia at all; nor does it

26

27       [3]     Plaintiff cannot rely upon paragraphs four, six and seven of that
    affidavit as the court previously granted Eagle's motion to strike those
28  paragraphs.  <u>See</u> <u>Harris</u>, 2008 WL 343260 at *6.

1   mention the Agreement which is the subject of this litigation.

2   Those omissions coupled with the just quoted sweeping averment fall

3   far short of showing by clear and convincing evidence that the

4   parties modified the Agreement to expand Harris' sales territory to

5   include Asia.  Nor does this averment, standing alone, create a

6   genuine issue of material fact on that narrow issue of oral

7   modification.

8       Furthermore, the court finds, as it has before, that "Mr.

9   Domke's affidavit does not 'affirmatively' show that he has

10  'personal knowledge' and 'is competent to testify to the matters

11  stated' in th[at] paragraph[]." <u>Harris</u>, 2008 WL 343260, at *6

12  (citing Fed. R. Civ. P. 56(e)).  Thus, even if paragraph five of

13  Mr. Domke's affidavit was probative of the oral modification issue,

14  this lack of foundation would preclude the court from considering

15  it in response to this summary judgment motion.

16      Despite Eagle's contrary assertion,[4] plaintiff did cite to Mr.

17  Harris' deposition testimony (as well as to Mr. Foxman's), to

18  support its oral modification argument.  It is true that when

19  enumerating the evidence which plaintiff believes supports such a

20  finding, plaintiff did not mention that deposition testimony.

21  Plaintiff briefly discusses that testimony elsewhere in its

22  response however.  <u>See</u> Resp. (doc. 139) at 8:7-15.  Therefore, the

23  court is compelled to consider the potential impact of the cited

24  testimony upon Eagle's summary judgment motion.

25      Plaintiff cites to a single comment by Eagle's President, Mr.

26

27      [4]   Eagle inaccurately states that plaintiff "does not even cite Mr.

28  Harris' own testimony on the issue[]" of oral modification.  Reply (doc. 154) at
    9:24, n.5.

1  Foxman, that after receiving the November 29, 2000, notification

2  letter, he did not "recall any conversation" with Mr. Harris.  Id.

3  at 8:10-11 (citing doc. 115 (Foxman Dep'n) at 77:19-20).  Plaintiff

4  contrasts that response with a selected portion of Mr. Harris'

5  deposition wherein he was questioned about a conversation he claims

6  to have had with Mr. Foxman.  During that purported conversation,

7  Harris testified that Foxman "asked [him] to go to Singapore to

8  meet with Mr. Wu."  Doc. 125 (Harris Dep'n) at 87:19-20.  When

9  asked about whether he had any "follow-up discussions with Mr.

10  Foxman about this topic[,]"  Mr. Harris further testified:

11          Yes, we had. [Mr. Foxman] was very curious as
            to how things went over in Asia and how - -
12          who Mr. Wu and I saw.  How we did.  What other
            potential opportunities are there.  And I've
13          been back to Asia several other time and met
            with Mr. Wu and had follow-up calls on the
14          accounts that we went to see.

15  Id. at 87:22-88:5.  The last excerpt from Mr. Harris' testimony to

16  which plaintiff cites reads as follows:

17          Q.  Did you and Mr. Foxman ever document this
            exchange in writing?
18
            A.  I wish.
19

20  Id. at 88:6-8.  Simply put, this uncorroborated testimony is

21  insufficient to meet plaintiff's burden of proof on the oral

22  modification issue, even taking into account the procedural posture

23  of this case.

24      Eagle relies primarily upon South Shore Amusements, Inc. v.

25  Supersport Auto Racing Ass'n, 136 Ill.App.3d 284 (1985), to support

26  its argument that plaintiff "has no admissible evidence" of oral

27  modification.  Mot. (doc. 81) at 11:33.  The parties in South Shore

28  executed a written contract wherein plaintiff agreed to lease a

building from defendant to broadcast a closed circuit telecast of a boxing match.  Id. at 284.  When the match had to be rescheduled due to injury, plaintiff's president claimed that he advised defendant's president of the delay and the former "orally agreed to make [the building] available to show the match on another date." Id. at 286.

The court held that that "wholly uncorroborated" testimony of oral modification by plaintiff's president was "insufficient to establish that the original written contract was modified by a subsequent oral agreement."  Id. at 287; and 288.  Elaborating, the court noted the absence of "cancelled contracts, cancelled checks, written correspondence, evidence of equipment rescheduling, or any other evidence of subsequent acts to support [plaintiff's] contention that the written agreement was later modified by an oral agreement."  Id. at 287.  The court further reasoned that that uncorroborated testimony was insufficient given that it was "emphatically refuted by" defendant's president and sole shareholder.  Id.  The court in South Shore also pointed to the lack of record evidence "as to the date on which the boxing match was rescheduled to be shown."  Id.

As Eagle views it, Harris' oral modification claim "falls squarely within" the holding in South Shore.  Mot. (doc. 81) at 11:27.  Eagle reasons that as in South Shore, plaintiff offers only the "uncorroborated and disputed testimony" of oral modification. Id. at 12:2.  Eagle further points out that much like South Shore "there is no specificity" in terms of the purported modification. Id. at 12:4.  For example, the record is silent as to the terms of this purported modification, such as the commission structure for

1   sales to Asia.   Indeed, Eagle notes that Mr. Harris testified that

2   Mr. Foxman "[d]id not" say "how much the commissions would be[.]"

3   See Doc. 126 (Harris Dep'n) at 159:22-23.   Accordingly, Eagle

4   believes that South Shore provides ample authority for finding that

5   Harris cannot, by relying upon the quoted excerpt from Mr. Harris'

6   deposition, defeat summary judgment on the oral modification issue.

7       Plaintiff Harris counters that the South Shore court had the

8   benefit of the "entire trial record," whereas here the parties are

9   only at the summary judgment stage.   Resp. (Doc. 139) at 15:6.

10  Accordingly, plaintiff baldly asserts that a trial is necessary to

11  determine whether its evidence of oral modification is "clear and

12  convincing."   Id. at 15:7.   Plaintiff attempts to buttress this

13  argument by citing to Midwest Enterprises, Inc. v. Generac Corp.,

14  1991 WL 169059 (N.D.Ill. 1991).   Plaintiff's argument misses the

15  mark on both counts.

16      Admittedly, South Shore involved a trial; the court was not

17  accessing the sufficiency of the proof on a summary judgment

18  motion.   In some circumstances that would be a legally significant

19  distinction, but it is not here.   That is because plaintiff Harris

20  misconceives the nature of its burden at this juncture.   It is not

21  enough to simply raise the specter of a genuine issue of material

22  fact.   Rather, plaintiff must "set forth by affidavit or as

23  otherwise provided in Rule 56, specific facts showing that there is

24  a genuine issue for trial.," Harris, 2008 WL 343260, at *12

25  (quoting Anderson, 477 U.S. at 248).   As this court previously

26  explained in Harris:

27              This [e]vidence must be concrete and cannot
                rely on mere speculation, conjecture, or
28              fantasy. . . .   Similarly, a mere scintilla of

- 15 -

1
2
3

> evidence is not sufficient to defeat a properly
> supported motion for summary judgment; instead,
> the nonmoving party must introduce some significant
> probative evidence to support the complaint.

4  Id. (internal quotation marks and citations omitted).  Plaintiff

5  Harris had not met that burden.  At best, it has shown "that there

6  is some metaphysical doubt as to the material facts[,]" but that is

7  not a sufficient basis upon which to oppose summary judgment.  See

8  id. (internal quotation marks and citation omitted).  Thus, despite

9  the difference in procedural posture, the court finds that South

10  Shore is applicable here.  Mr. Harris' wholly uncorroborated

11  testimony, quoted herein, does not rise to the level of clear and

12  convincing evidence necessary to survive a motion for summary

13  judgment on the issue of oral modification.

14      Nor does Midwest Enterprises provide an adequate basis upon

15  which to deny Eagle's motion insofar as it pertains to the issue of

16  oral modification.  The court in Midwest Enterprises did partially

17  deny summary judgment, but not because of a factual issue as to

18  oral modification.  Indeed, oral modification was not an issue in

19  Midwest Enterprises.  Accordingly, Midwest Enterprises is wholly

20  inapposite to the oral modification issue herein, and does not

21  alter the court's view that Harris has not come forth with any

22  evidence, let alone clear and convincing, of oral modification.

23      The court realizes that ordinarily "the existence of an oral

24  modification - as well as its terms, conditions, and the intent of

25  the parties- are all questions of fact that must be determined by a

26  trier of fact."  Household Financial Services, Inc. v. Coastal

27  Mortgage Services, Inc., 152 F.Supp.2d 1015, 1022 (N.D.Ill. 2001)

28  (citations omitted).  This rule presupposes, however, that in the

1    first instance a plaintiff has come forth with evidence which is

2    sufficient to raise a genuine issue of material fact.  As just

3    explained, plaintiff Harris has not done that.  As in BMO Capital

4    Markets Corp. v. McKinley Medical LLC, 2007 WL 2757172 (N.D.Ill.

5    2007), plaintiff "makes broad statements regarding a modification,

6    which on their face [may] appear to raise factual issues that

7    cannot be resolved" on summary judgment.  Id. at *10.

8    Significantly, however, also as in BMO Capital, "a review of the

9    evidence pointed to in support of [plaintiff's] accusations shows

10   that [plaintiff] lacks support for its statements."  See id.

11       Additionally, Harris' "self-serving belief that [the

12   Agreement] was modified is not sufficient to show a modification."

13   See id. at *11 (citation omitted).  Consequently, the court finds

14   that, as a matter of law, plaintiff has not shown oral modification

15   by clear and convincing evidence so as to amount to a waiver of the

16   Agreement's integration clause.  Based upon this finding, it

17   necessarily follows that the Agreement: (1) was not orally modified

18   to expand Harris' sales territory to include Asia; and (2) it is a

19   written contract to which Illinois' ten year statute of limitations

20   applies.

21       In its complaint Harris alleges that Eagle "failed and refuses

22   to pay sales commissions to [Harris] for sales to [Harris']

23   Accounts for the period of November 1998 to present."  Co. (doc. 1)

24   at 3:17-18, ¶ 12.  Assuming arguendo, based upon that allegation,[5]

25   a November 1998 accrual date, because Harris filed this action on

26

27       [5]    Given the present state of the record, there are two other possible
28   accrual dates, as more fully discussed below.  Those dates are well after November,
     1998, however, and thus easily fall within the ten year statute of limitations.

- 17 -

1  October 16, 2006, its breach of contract claim is timely.

2  Therefore, the court denies Eagle's summary judgment motion to the

3  extent it is arguing that count I, breach of contract, is barred by

4  the statute of limitations.  Thus, the court must next address the

5  merits of that claim.

6          ***2.  Merits***

7      Harris alleges that Eagle's "failure and refusal to pay sales

8  commissions due [Harris] on [Harris'] Accounts, constitutes [a]

9  material and unilateral breach of the Agreement[.]" <u>Id.</u> at 5:10-11,

10  ¶ 22.  To establish a breach of contract under Illinois law, a

11  plaintiff must show: "(1) the existence of a valid and enforceable

12  contract; (2) performance by the plaintiff; (3) breach of contract

13  by the defendant; and (4) resultant injury to the plaintiff."

14  <u>Smith v. Village of Norridge</u>, 2008 WL 697352, at *3 (N.D.Ill. 2008)

15  (internal quotation marks and citation omitted).  Although not

16  framed in terms of those elements, Eagle seems to be arguing that

17  summary judgment is proper on what remains of the breach of

18  contract claim because Harris cannot show a breach in that it "has

19  no specific admissible evidence that Eagle owes it any commissions

20  under the Agreement."  Mot. (doc. 81) at 2:1-2.

21      It is undisputed that "Eagle paid Harris $152,538.34 in

22  commissions for sales in Harris' territory of Arizona and New

23  Mexico that were closed from November 12, 1998 through March 1,

24  2001[.]" DSOF (doc. 82) at 3, ¶ 19:13-16 (citations omitted).

25  Eagle arrived at the March 1, 2001, date by relying upon the

26  provision in the Agreement which allowed "either party," without

27  cause," to "terminate" that Agreement "on ninety (90) days written

28  notice[.]" <u>See</u> Larsen Decl'n (doc. 85), exh. 15 thereto at ¶ 7(a).

of termination provision.  Construing Harris' November 29, 2000,
letter as terminating the Agreement, Eagle then calculated March 1,
2001 as being 90 days thereafter.  It is also undisputed that
Harris received some commission payments after that March 1, 2001,
date "because Eagle had not received payments from its customers as
of that date, and therefore, commission payments to Harris were not
yet due."  Aidikonis Decl'n (doc. 84) at 1:21-23, ¶ 3.  In fact, as
mentioned earlier, Harris received commission payments as late as
2003 due to outstanding invoices.  Aidikonis Dep'n (doc. 119) at
20:13-21:12.  Based upon the foregoing, Eagle maintains that it is
entitled to summary judgment on the breach of contract claim
because it paid Harris in accordance with the Agreement.

Harris does not challenge the foregoing in any way.  Indeed,
it would be hard pressed to do so given that in <u>Harris</u>, 2008 WL
343260, it did "not controvert the fact that Eagle paid [it]
$152,538.34 in commissions for sales that were ordered prior to
March 1, 2002, which was 90 days after [plaintiff] terminated the
Agreement on November 29, 2000."  <u>Id.</u> at *13 (internal quotation
marks and citation omitted).  Instead, Harris broadly declares that
"[t]he parties disagree . . . on *many* material factual issues[,]"
thus rendering summary judgment inappropriate.  Resp. (doc. 139) at
4:21 (emphasis added).  Despite that sweeping assertion, tellingly,
Harris only identifies one disputed issue - "when sales commissions
should stop."  <u>Id.</u> at 10:18.  This dispute arises, according to
Harris because of the differing interpretations the parties have as
to the significance of the November 29, 2000, notification letter.
According to Harris that letter served as "a notice of breach and
demand for payment of commissions due[,]" whereas Eagle viewed it

1  as terminating the Agreement.  Id. at 4:23-26 (citations omitted).

2  Significantly, Harris does not offer, let alone point to any record

3  evidence, of an alternate date for stopping commission payments.

4      What is more, in highlighting those differing interpretations,

5  Harris refers only to sales to Asia.  In particular, Harris

6  contends that because the parties disagree as to the meaning of the

7  November 29th letter, Eagle's "rationale to not pay commission on

8  [Harris'] account's [sic] purchases that were shipped to the same

9  account facilities in Asia, is nonsensical." Id. at 10:2-3.  The

10 foregoing leads the court to believe that Harris is arguing that

11 there is a genuine issue of material fact as to commissions

12 purportedly due for sales to Asia.  Hence, the court should deny

13 Eagle's summary judgment motion in this regard.  Given the court's

14 finding, however, that the Agreement does not encompass sales to

15 Asia, this claimed factual dispute as to the meaning of the

16 notification letter does not preclude summary judgment.

17     To the extent Harris may be asserting that it is due

18 commissions under the Agreement for non-Asia sales, still, it is

19 unable to defeat summary judgment.  First, as already explained,

20 there is no dispute that Eagle paid Harris $152,538.34 in

21 commissions due under the Agreement.  Second, Harris had not met

22 its burden, as the non-moving party, of pointing to specific facts

23 demonstrating a genuine issue for trial in terms of commissions

24 allegedly due it under the Agreement.

25     As to any non-Asia commissions allegedly due Harris, Eagle

26 propounded the following interrogatory to Harris:

27              State the total amount of commissions, if any,
             YOU contend EAGLE . . . did not pay YOU that YOU
28           were entitled to during YOUR relationship with

1        EAGLE . . . pursuant to the . . . Agreement[.]

2   Larsen Decln' (doc. 85), exh. F thereto at 4:16-19.  Harris

3   responded:

4            [It] is entitled to be paid sales commission on
             *all sales* made by Defendant [sic] to Motorola, ON

5            Semiconductor, Freescale, Burr-Brown, Texas
             Instruments, AIT Batam, Alphatec, ASAT, ASE, Carsem

6            Semiconductor, Fairchild, Microchip Technology and
             Advanced Test Resources.

7

8   Id., exh. F thereto at 4 (emphasis added).  The obvious flaw with

9   Harris' claim that it is owed commissions on "all sales" made to

10  the listed entities is that it contradicts the plain language of

11  the Agreement.  The Agreement is clear that Harris' is to be paid

12  commissions for sales of certain products associated with its

13  "geographic area described as Arizona and New Mexico[.]" Larsen

14  Decl'n (doc. 85), exh. 15 thereto at ET000001.  Yet, Harris has not

15  come forth with any evidence that the sales to which it refers in

16  that interrogatory answer were in any way associated with Arizona

17  and New Mexico.  In fact as to six of those entities, Mr. Harris

18  testified that he did not know if the products were shipped in or

19  out of Arizona or New Mexico.  DSOF (doc. 82) at 47 (citations

20  omitted).  In short, Harris has not pointed to anywhere in this

21  fairly extensive record showing, at a minimum, that there are

22  genuine issues of material fact as to whether it is owed

23  commissions under the Agreement.

24       Lastly, Harris mentions the procuring cause doctrine in

25  passing.  Harris unsuccessfully invoked that doctrine when

26  responding to Eagle's motion for partial summary adjudication.  The

27  court observed then that the applicability of that doctrine was

28  "highly doubtful, especially . . . where plaintiff has not

1   'offer[ed] any evidence tying specific invoices to efforts' made by

2   it."  Harris, 2008 WL 343260, at *17 n. 12 (quoting Hammond Group,

3   Ltd. v. Spalding & Evenflo Companies, Inc., 69 F.3d 845, 850 (7th

4   Cir. 1995)).  Elaborating, the court stated:

5              all that [Harris] has done is to baldy refer
            to accounts listed by name only i[n] its complaint,
6              without reference to time frame or region.  This
            is an insufficient basis upon which to allow recovery
7              under the procuring cause doctrine. [citing Hammond,
            69 F.3d at 850] (under Illinois law, procuring
8              cause doctrine did not entitle a manufacturer's
            representative to recover commissions which arose
9              after contract termination where the representative
            'did not offer any evidence tying specific invoices
10             to [its] efforts").

11  Id.  Harris did not even do that much in response to the current

12  summary judgment motion.  Thus, it cannot rely upon the procuring

13  cause doctrine to defeat Eagle's properly supported motion for

14  summary judgment on Harris' breach of contract claim.  The court,

15  therefore, finds that although Harris' breach of contract claim is

16  timely, because Harris has not come forth with a genuine issue of

17  material fact as to the merits, summary judgment in Eagle's favor

18  is proper as to this breach of contract claim.  The court will

19  turn to Harris' remaining claims for an accounting and unjust

20  enrichment.

21      **B.  Accounting**

22      In count III of its complaint, Harris "demands a full

23  accounting from [Eagle] of all sales activity with [Harris']

24  Accounts, to include a production of all records of same pursuant

25  to 735 ILCS 5/8-402."  Co. (doc. 1) at 6, ¶ 26:1-3.  Eagle asserts

26  two bases for summary judgment as to this count.  First, it is time

27  barred and second, it fails as a matter of law because Harris has

28  an adequate remedy at law.  The court will address these arguments

- 22 -

1  *seriatim.*

2         **1.  *Statute of Limitations***

3      Relying upon, 735 ILCS 5/13-205, Eagle claims that Harris'

4  accounting claim is untimely as a matter of law because Harris

5  brought this claim "for commissions allegedly owed under the

6  Agreement over 5 years after it had notice such a claim might

7  exist."  Mot. (doc. 81) at 14:11-12.  This analysis is cursory, to

8  say the least, and hence not particularly enlightening.

9      Harris, in effect, makes a tolling argument in response.

10  Based solely upon <u>American Steel Foundries v. The Railroad Supply</u>

11  <u>Co.</u>, 235 Ill.App. 228, 1924 WL 3705 (1924), Harris contends that

12  "the Statute of Limitations for an accounting does not start to run

13  while payments are being made and until the transactions are

14  completed."  Resp. (doc. 138) at 14:8-9 (citation omitted).

15  Relying upon the deposition of Eagle's Account Payable Manager, who

16  agreed that she "carr[ied]" some commission payments to Harris

17  "over into 2003[,]" Harris maintains, without explanation, that its

18  accounting cause of action is not barred under the five-year

19  statute of limitations.  PSOF (doc. 140), exh. 3 thereto (doc. 119)

20  at 20:23-21:1.  It is safe to assume that Harris' reasoning is that

21  the accounting cause of action accrued in 2003, due to those

22  "carry-over" payments, and thus because Harris filed its complaint

23  on October 16, 2006, it is timely.

24      Eagle is correct that "Illinois applies a five-year limitation

25  to an accounting claim."  <u>Glovaroma, Inc. v. Maljack Productions,</u>

26  <u>Inc.</u>, 71 F.Supp.2d 846, 857 (N.D.Ill. 1999) (citing <u>Kedzierski v.</u>

27  <u>Kedzierski</u>, 899 F.2d 681, 682 (7th Cir. 1990)).  In determining the

28  accrual date for an accounting cause of action, Illinois also

applies the discovery rule.  The discovery rule "provides that the relevant statute of limitations  begins to run when a person knows or reasonably should have known of his injury and also knows or reasonably should have known that it was wrongfully caused." <u>Santa Claus Industries, Inc. v. First National Bank of Chicago</u>, 216 Ill.App.3d 231, 236 (1991) (citation omitted).  Courts have stressed that "'wrongfully caused' does not connote knowledge of the existence of the cause of action." <u>Id.</u> (citation omitted). "Instead, it is a general or generic term, signifying the point at which the injured person has sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." <u>Id.</u> (citation omitted).

Applying the discovery rule in <u>Santa Claus Industries</u>, the court held that plaintiff's accounting cause of action against a bank was barred by section 13-205 because it "accrued in April 1980, when the final payment under the . . . Note was due." <u>Id.</u> at 237.  Reasoning that plaintiff had a "copy of the . . . Note and was on notice as to its terms, which included a payment schedule[,]" the court held that "[e]ven if [plaintiff] did not know in late 1978/early 1979 that [a third-party] had prepaid its obligation under the . . Note, it knew that [third-party] was obligated to make quarterly interest payments, commencing July 15, 1975, and it knew that the . . . Note was due and payable in April 1980." <u>Id.</u> at 237-238.  Accordingly, "when [plaintiff] never received any interest payments by April 1980, it knew or should have known that it had been injured and that the injury had been wrongfully caused." <u>Id.</u> at 238.  Thus, the court affirmed the

trial court's holding that plaintiff had five years from that date
within which to file its accounting action; and because it did not,
dismissal was proper.  See also Glovaroma, 71 F.Supp.2d at 857
(granting summary judgment on accounting claim because it was
untimely in that plaintiff "first became aware" of that claim "on
April 1989 when she first protested [defendant's] first royalty
report[,]" but she did not commence that action until more than
five years later).

     In arguing that Harris' accounting cause of action is not
timely, Eagle did not even hint at what it believes the accrual
date should be.  The court gleans two possibilities from Eagle's
motion overall, however.  First, Eagle could be employing November
29, 2000, the date of the notification  letter.  This is one
possible accrual date because in that letter, among other things,
Harris explicitly "demand[s] a full accounting of the commissions
due, and for [Eagle] to issue a commission check immediately."
Foxman Decl'n (doc. 83), exh. A thereto at 1 (emphasis added).
"'In most instances, the time at which a plaintiff knows or
reasonably should have known both of the injury and that it was
wrongfully caused will be a disputed question of fact.'"  Aebischer
v. Stryker Corp., 2008 WL 2941172, at *2 (7th Cir. 2008) (quoting
Castello v. Kalis, 352 Ill.App.3d 736 (2004)).  Given the
unequivocal language just quoted, summary judgment is proper on
this issue however.  That is so because "the jury could draw but
one conclusion from the evidence[,]" id. (citation omitted); and
that conclusion is that on November 29, 2000, Harris had
"sufficient information concerning [its] injury and its cause to
put a reasonable person on inquiry to determine whether actionable

1 | conduct is involved."  See Santa Claus Industries, 216 Ill.App.3d
2 | at 236 (citation omitted).

3 |     Several other statements in that November 29, 2000, letter
4 | contribute to this finding.  For example, Harris declared that it
5 | had "not received a commission check from [Eagle] since April 2000,
6 | and ha[s] yet to receive any commissions from bookings in the year
7 | 2000."  Id.  Harris continued that it "believe[d] there [we]re
8 | other commissions outstanding from 1999."  Id.  Harris added that
9 | it "fe[lt] that there [we]re moneys due [it], from [its] efforts at
10 | ON Semiconductor[,]" and that it "fe[lt] [it] [wa]s entitled to at
11 | least 3% of all business generated by [those] efforts . . . , and
12 | per the [Agreement]."  Id.  Furthermore, Harris informed Eagle that
13 | it was "aware" of the existence of "purchase orders which [Eagle]
14 | ha[d] yet to deliver against and [Harris] . . . expect[ed] those
15 | moneys to be paid out in accordance" with the Agreement.  Id.
16 | Before closing, Mr. Harris wrote:  "By failing to pay [Harris] for
17 | the past 9 months, you have given me no choice but to terminate the
18 | [Agreement] effective immediately."  Id.  To stress that point, Mr.
19 | Harris expressly stated, "Please use this letter as your formal
20 | notification Harris . . . , no longer represents [Eagle]."  Id.
21 | These protestations by Harris, including the explicit demand for an
22 | accounting, easily support using November 29, 2000, as the accrual
23 | date herein.  Thus, because the present action was not filed until
24 | October 16, 2006, more than five years after that accrual date,
25 | Harris' accounting claim is time-barred.

26 |     Another possible accrual date is less exact, but mandates the
27 | same result.  Mr. Harris agreed that "Harris stopped working for
28 | Eagle . . .[i]n July 2001[.]" PSOF (doc. 140), exh. 3 thereto (doc.

1  126) at 131:22-24.  Under that scenario, this accounting cause of

2  action also would be time-barred because this action was filed more

3  than five years later.  Accordingly, because the statute of

4  limitations has run, the court grants Eagle's summary judgment as

5  to count III -- the "demand for accounting."

6      Harris' tolling argument is unavailing and thus does not

7  require a different conclusion.  Harris' reliance upon American

8  Steel is misplaced because that was an action "in assumpsit[,][6] not

9  for an accounting.  American Steel, 235 Ill.App. at ___, 1924 WL

10  3705, at *1.  Additionally, the statute there was tolled because

11  "there was an acknowledgment of the debt by the defendant[.]" Id.

12  at ___, 1924 WL 3705, at *9.  Obviously Eagle has not made a

13  similar acknowledgment.  Thus, American Steel does nothing to

14  advance Harris' tolling argument.

15          **_2. Merits_**

16      Even if timely, Eagle contends that because this accounting

17  claim is equitable, and because Harris has an adequate remedy at

18  law, summary judgment is, nonetheless, proper as to this claim.

19  Plaintiff emphatically responds that its **CLAIM FOR AN ACCOUNTING**

20  **IS STATUTORY**[.]" Resp. (doc. 139) at 16:11 (emphasis in original).

21  To emphasize this point, Harris claims that Eagle is "confus[ing]

22  an equitable action for an accounting with [Harris'] statutory

23  count for an accounting brought under 735 ILCS 5/8-402, as cited in

24  its complaint." Id. at 16:12-13.  Continuing to stress this

25  supposed distinction, Harris asserts that the case law discussing

26

27      [6]    This is "[a] common-law action for breach of [an express or implied
   promise, not under seal] or for breach of a contract." Blacks Law Dictionary ( 8th
28  ed. 2004).

1    equitable accounting claims, upon which Eagle relies, thus is
2    inapplicable.

3        There is no distinction between an equitable and statutory
4    accounting cause of action, Eagle responds, noting Harris' lack of
5    authority to support this claimed distinction.  Further, Eagle
6    accurately responds that 735 ICLS 5/8-402, the alleged statutory
7    basis for Harris' accounting claim, is merely a discovery device
8    and does not provide a basis for an accounting claim.

9        Eagle has the stronger argument by far here.  First, even
10   accepting Harris at its word, *i.e.* that it is not seeking an
11   equitable accounting, the court cannot ignore the unequivocal
12   "demand[] [for] a full accounting[]" in Harris' complaint.  <u>See</u>
13   Co. (doc. 1) at 6:1, ¶ 26.  Given that broad demand, to the extent
14   the complaint can be read as alleging a claim for unjust
15   enrichment, the court grants Eagle's motion for summary judgment.
16   <u>See</u> <u>Surfers Unlimited, L.L.C. v. Telebrands Corp.</u>, 1997 WL 285875,
17   at *1 (N.D.Ill. 1997) (where defendant "explicitly request[ed] an
18   accounting in its Counterclaim[,]" court dismissed such claim for
19   failure to allege no adequate remedy at law, although defendant
20   indicated it had "deliberately" not pled the equitable accounting
21   elements).

22       Second, shifting gears to Harris' purported "statutory"
23   accounting claim, there is no legal basis for that claim.  Harris
24   does not provide any legal authority supporting such a claim and
25   the court's research revealed none.  Furthermore, on its face the
26   plain language of 735 ILCS 5/8-402, the statute upon which Harris
27   relies as the basis for this accounting claim, pertains to
28   discovery.  That statute, entitled "[p]roduction of books and

writings[,]" reads in its entirety as follows:

> The circuit courts shall have power, in any action pending before them, upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue.

735 ILCS 5/8-402.  Plainly, that statute does not provide for an accounting cause of action, expressly or impliedly.  Rather, that "statute contemplates the production of evidence[.]"  <u>Carden v. Ensminger</u>, 329 Ill. 612, 618 (1928).  In other words, 5/8-402 is a discovery mechanism – nothing more.

Harris' reliance upon section 5/8-402 to support an independent cause of action is misplaced for another reason.  By its terms, that statute grants "circuit courts" the power to act thereunder.  "Circuit courts" are Illinois state trial courts – not federal district courts such as this one.  Discovery in this United States District Court is governed, obviously, by the Federal Rules of Civil Procedure – not by state court statutes.  For these reasons, the court finds no basis for Harris' statutory accounting claim.  As the foregoing shows then, even if Harris' accounting cause of action was timely, Eagle is entitled to summary judgment on the alternative basis that that cause of action is insufficient as a matter of law.

### *C.  Unjust Enrichment*

As with plaintiff's accounting cause of action, Eagle asserts that plaintiff's unjust enrichment cause of action is barred by the statute of limitations; and, in any event, is legally insufficient. . . .

1

### 1.  Statute of Limitations

2  Actions for unjust enrichment, like accounting actions, are

3 governed by the five year statute of limitations found in section

4 13-205.  <u>Frederickson v. Blumenthal</u>, 271 Ill.App.3d 738, 742

5 (1995).  Eagle maintains, as it did with respect to Harris' demand

6 for an accounting, that this cause of action "accrued more than

7 five years before Harris filed suit[,]" and hence it is barred

8 under the applicable statute of limitations.  Mot. (doc. 81) at

9 13:14-16.  Harris' response is one sentence: "Applying the same

10 authority as cited . . . for breach of contract and an accounting,

11 [its] alternative cause of action for Unjust Enrichment, is not

12 barred by Illinois' five . . . year Statute of Limitations."  Resp

13 (doc. 139) at 15:18-20.

14  The court surmises that Harris again is positing that the

15 Eagle's 2003 "carry over" payments tolled the five year statute of

16 limitations.  Partial payment will toll the statute of limitations

17 for breach of written contracts, such as in <u>Krajcir v. Egidi</u>, 305

18 Ill.App.3d 613, 622 (1999), to which Harris cites.  There, in an

19 action to enforce a non-negotiable promissory note, the court held

20 that the ten year statute of limitations under section 13-206 began

21 when the vendor received a check from the purchasers making partial

22 payment on the amount due under the note.  <u>Id.</u> at 622.  Harris does

23 not provide any authority for applying that rule in the unjust

24 enrichment context.

25  Of equal if not more import is that in <u>Krajcir</u> the court was

26 applying section 13-206, which expressly permits tolling for

27 partial payment, unlike the five year statute of limitations which

28 governs this unjust enrichment claim.  See 735 ILCS 5/13-206

1   (emphasis added) ("[B]ut if *any payment* . . . to pay has been made,

2   . . . , on any bond, note, bill, lease, contract, or other written

3   evidence of indebtedness, within or after the period of 10 years,

4   then an action may be commenced thereon at any time within 10 years

5   after the time for such payment[.]") Because section 13-205 does

6   not contain a similar partial payment provision, and because Harris

7   does not provide any legal authority for its argument that an

8   unjust enrichment claim can be similarly tolled, the court declines

9   to adopt this view.  Therefore, for the same reasons that Harris'

10  accounting cause of action is time-barred, so, too, is its unjust

11  enrichment claim.  The court thus grants summary judgment in

12  Eagle's favor on this claim as well.

13          ***2.  Merits***

14          Even if Harris' unjust enrichment claim is timely,

15  nonetheless, summary judgment in Eagle's favor on that claim is

16  proper.  Summary judgment is proper because, as set forth below, as

17  a matter of law that theory of recovery is unavailable to Harris.

18          Under Illinois law, "[w]here the subject matter of a suit is

19  governed by a contract, it is axiomatic that there can be no

20  recovery on the basis of a quasi-contractual theory like unjust

21  enrichment."  Coy Chiropractic Health Center, Inc. v. Travelers

22  Casualty & Surety Co., 2007 WL 2122420, at *8 (S.D.Ill. 2007)

23  (citing, *inter alia*, Borowski v. DePuy, Inc., 850 F.2d 297, 301

24  (7th Cir. 1988) (under Illinois law, "[i]f the parties enter into

25  an agreement, they choose to be bound by its terms . . . [A]n

26  action sounding in quasi-contract will not lie.") Significantly,

27  the fact that a "specific subject matter is not covered in the

28  express contract[]" does not change this rule.  See Borowski, 850

1  F.2d at 301 (citations omitted).  Under those circumstances, unjust

2  enrichment still is not a viable theory of recovery.

3      Applying those well-established rules to the present case

4  entitles Eagle to summary judgment as to Harris' unjust enrichment

5  claim.  The Agreement between Harris and Eagle is the "real

6  contract" which governs the parties' dealings herein.  Therefore,

7  Harris cannot recover on an unjust enrichment theory.  See Murray

8  v. Abt Assocs., Inc., 18 F.3d 1376, 1379 (7th Cir. 1994) ("Illinois

9  does not permit recovery on a theory of quasi-contract when a real

10 contract governs the parties' relations.") Significantly, plaintiff

11 cannot avoid that result by asserting that it is entitled to

12 recover based upon unjust enrichment for Asia sales commissions, a

13 subject area not covered in the Agreement.  See The Essex Real

14 Estate Group, Ltd. v. River Works, L.L.C., 2002 WL 1822913, at *9

15 (N.D.Ill. 2002) (dismissing quantum meruit claim because plaintiff

16 brought that claim "only to redress an area not discussed in the

17 [parties'] Agreement: breach of the Agreement by 'shopping' the

18 terms of the loan and the damages resulting from such a breach[]").

19     Plaintiff attempts to take refuge in the liberal pleading

20 which Fed. R. Civ. P. 8(e)(2) allows, whereby a party may plead

21 alternative and even inconsistent theories of recovery.  See Coy

22 Chiropractic, 2007 WL 2122420, at *8 (citations omitted) ("at the

23 pleading stage a plaintiff may assert alternative and inconsistent

24 claims for relief based on contractual and quasi-contractual

25 theories of recovery").  Plaintiff Harris seems to suggest that if

26 there is a finding, as there has been, that the Agreement was not

27 orally modified to include Asia as part of its sales territory,

28 nonetheless, it can recover commissions allegedly due for sales to

1    Asia on a theory of unjust enrichment.   Plaintiff's argument might

2    carry some weight if this were a Rule 12 motion to dismiss where

3    the focus is solely on the adequacy of the pleadings.   On this

4    summary judgment motion, however, this alternative pleading

5    argument carries no weight.   Both because it is time barred and

6    because it is not a viable theory of recovery, the court grants

7    Eagle's motion for summary judgment as to count II of the complaint

8    alleging unjust enrichment.

9        In response to Eagle's previously filed motion for partial

10   summary judgment, Harris relied upon the Illinois Sales

11   Representative Act, 820 ILSC § 820 ILSC § 120/0.01 *et seq.*

12   Mistakenly referring to that Act as the Illinois Wage Payment and

13   Collection Act,[7] Eagle is seeking summary judgment in this regard

14   as well.   The primary basis for Eagle's argument is, as this court

15   pointedly noted in <u>Harris</u>, the "complaint does not mention th[at]

16   Act[]; and a plaintiff, . . . , cannot raise a new theory of

17   liability in opposition to summary judgment."   <u>Harris</u>, 2008 WL

18   343260, at *17 (internal quotation marks and citations omitted).

19       Disregarding this omission in its complaint, Harris baldly

20   counters that it is "covered" as a "'principal'" under that Act;

21   and that it "disclosed" that Act "as a measure of damages . . . in

22   its Rule 26(e) supplemental disclosure[.]" Resp. (doc. 139) at

23   17:4-9 (citation and footnote omitted).   That disclosure does not

24   alter the fact, however, that Harris' complaint does not suggest

25   that the Illinois Sales Representative Act may be a theory of

26

27          [7]    In its Reply Eagle readily concedes its mistake, explaining that
     despite the fact that it "erroneously referred to the Illinois Wage Payment and
28   Collection Act, . . . , [it] cited and analyzed the . . . Illinois Sale
     Representative Act." Resp. (doc. 154) at 11:22, n. 2.

liability herein.   Thus, consistent with <u>Harris</u>, the court finds that plaintiff is precluded from asserting a claim under that Act at this juncture.   Accordingly, the court grants Eagle's summary judgment motion in this regard as well.

The court's determination that Eagle is entitled to summary judgment as to each of the three causes of action in Harris' complaint, renders moot the remaining pending motions for extensions of time (docs. 69, 72 and 74); to compel (doc. 78); for a sealing order (doc. 90) and to preclude (doc. 92).   The court therefore denies these motions as moot.

To summarize, for the reasons set forth herein, IT IS ORDERED that:

(1) Defendant Eagle Test Systems, Inc.'s Motion for Summary Judgment or in the Alternative Partial Summary Judgment (doc. 81) is GRANTED; and

(2) Plaintiff Harris Technical Sales, Inc.'s motions for extensions of time (docs. 69, 72 and 74); to compel (doc. 78); for a sealing order (doc. 90) and to preclude (doc. 92) are DENIED.

The Clerk of the Court is directed to enter JUDGMENT in favor of defendant and terminate the case.

DATED this 12th day of September, 2008.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record

- 34 -